**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JOHN DOE, a minor,
by and through his parents and next friends,
JAMES AND JANE DOE,
Plaintiffs.                    PRO SE

V.

Attleboro Public Schools
        And
Massachusetts Bureau of Special Education Appeals
Massachusetts Department of Education,
Defendants

U.S. DISTRICT COURT
DISTRICT OF MASS.

2012 FEB 10  A II: 52

FILED
IN CLERKS OFFICE

## **Complaint**

## **INRODUCTION**

1.     This is a civil action brought by James Doe and Jane Doe, the parents of John Doe, a

child with disabilities pertaining to the BSEA case No. 09-6759, against the Attleboro Public

Schools ("Attleboro") and the Bureau of Special Education Appeals ("BSEA") pursuant to the

Individuals with Disabilities in Education Act 20 U.S.C. §§ 1400 et seq., Section 504 of the

Rehabilitation Act of 1973, , 42 U.S.C. $ 1983, Massachusetts 603 CMR 28 et seq. and the

Administrative Procedure Act

2.     The BSEA case No. 09-6759 was originally filed on May 3, 2009, in which the Does

were seeking provision of transportation to John Doe and reimbursement for transportation

provided by the Does for the 2007-2008 and 2008-2009 school years. The BSEA hearing officer

Dismissed with Prejudice without a hearing the Does' claim for 2007-2008 school year in August,

2009 and on November 29, 2009, a hearing was held for the remaining issue, that is

reimbursement for transportation the Does provided their child for the 2008-2009 school year.

The outcome of the hearing was an order issued by the Hearing Officer for Attleboro to reimburse

the Does for transporting John Doe to and from school for the entire 2008-2009 school year.

3.     On December 21, 2009, the Does filed an appeal to the ruling of the Hearing Officer

granting Attleboro' s Motion to Dismiss the Does' claim for reimbursement for transportation for

the 2007-2008 school year at the U.S.District Court in Boston, Massachusetts.(case No 1:09-cv-

12127-DJC). The Federal Judge determined that the Hearing Officer misapplied the laws and remanded the case back to the BSEA, instructing the Hearing Officer to apply the correct laws and standards. The court also dismissed without prejudice the Does' claim for costs and attorneys' fees as "unripe" to renew at the conclusion of the BSEA case.

4.       On December 1, 2011, a BSEA hearing was held on the matter of the parents' claim for reimbursement for transportation for the 2007-2008 school year.   After failing to forcibly convince the Does to accept Attleboro's settlement offer, which was made during pendency of the case in the U.S. District Court, The Hearing Officer made a final decision finding the Does claim moot because they had failed to accept Attleboro's settlement offer and determined that despite the procedural violations committed by Attleboro, Attleboro was not responsible for transportation. The Hearing Officer concluded that even though Attleboro did not provide the Does with the mandatory notice of procedural safeguards and the mandatory documents (under Massachusetts Special Education Reguslations) that allow the Does to accept or reject the School proposal, he Does could have consulted with any legal council, including Mr. Doe's sister who is an attorney practicing in Massachusetts and therefore should have known that they had rights and should have taken some unspecified measure to reject the placement despite the absence of the Team Determination of Educational Placement form that contains the check box to reject the placement.

5.       The Does believe that BSEA Hearing Officer had predetermined the outcome and that her actions before, during and after the hearing constitute an abuse of discretion, abuse of power and that she acted with bias and prejudice and made a decision that is egregious and not in accordance with the established laws. The Does are now seeking: a) judicial review of Bureau of the Special Education decision dated 12/16/2011 finding that  Attleboro Public Schools was not responsible for providing transportation to John Doe during the 2007-2008 school year, b) an order from this court for Attleboro  to reimburse parents for providing transportation to and from school for John Doe during the 2007-2008 school year,  c ) a declaratory judgment that the Hearing Officer of the Bureau of Special Education Appeals decision failed to act in accordance with the laws established and acted with malice and made decisions that are capricious and arbitrary. d) an award of costs and attorneys' fees incurred in the action before the Bureau of

Special Education Appeals in which the Does prevailed in getting reimbursed for providing transportation for the 2008-2009 school year and therefore succeeded in enforcing their rights pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794., e) an award of all costs incurred in filing this complaint in U.S. District Court and an award of costs incurred in filing the 2009 Complaint for the same BSEA case seeking judicial review of the BSEA ruling granting Attleboro's Motion to Dismiss the parents' claim for the 2007-2008 school year, in which they managed to get a remand back to the BSEA and thus enforced their due process right to an administrative hearing. f) a declaratory judgment that the BSEA hearing officer denied the Plaintiffs their rights for a fair and impartial hearing under the due process clause of the 14th Amendment of the U.S. Constitution; the IDEA; 42 U.S.C. $ 1983; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); and g) a declaratory judgment that Attleboro, through its attorneys conspired with the BSEA Hearing Officer to deny the Plaintiffs their right for a fair and impartial Due Process hearing under the due process clause of the 14th Amendment of the U.S. Constitution; the IDEA; 42 U.S.C. $ 1983; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") by threatening to sue the Plaintiffs for attorneys' fees if they proceeded with the hearing after the parents had prevailed in obtaining reimbursement for transportation they provided during the 2008-2009 school year.

## **JURISDICTION**

6.      The Court has jurisdiction over this matter pursuant to 20 U.S.C. §1400 et seq, and 42 U.S.C $ 1983; Section 504 of the Rehabilitation Act of 1973. This Court accordingly has jurisdiction of this action pursuant 42 U.S.C. § 1983 as well as Massachusetts 603 CMR 28 et seq. and the Administrative Procedure Act

7.      Venue for this action lies in this district. All of the events or omissions giving rise to the plaintiffs' claims occurred here and the defendants may be found here.

## **PARTIES**

8.      The plaintiffs, James Doe and Jane Doe ("Mr. and Mrs. Doe") are adult individuals who

maintain a permanent address in Attleboro, Bristol County, Massachusetts. They bring this action as the parents and next friends of the plaintiff, John Doe ("John", John Doe) a minor individual who resides with them in Attleboro, Bristol County, Massachusetts. The plaintiffs bring this action without publicly disclosing their names in order to protect the privacy of the minor child. The identities of the plaintiffs are known to the defendants in this action.

9.      At all times relevant to this matter, John Doe has been a resident of Attleboro and the Attleboro Public Schools has been responsible for providing special education and related services to him in accordance with the requirements of the Individuals with Disabilities Education Act, ("IDEA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

10.     The defendant, Bureau of Special Education Appeals of the Massachusetts Department of Education ("BSEA") is established pursuant to the laws of Massachusetts and is a public corporation with the capacity to be sued. The BSEA's usual place of business is in Malden, Middlesex County, Massachusetts. The BSEA has jurisdiction over disputes between the parents of a child with disabilities and school district. BSEA decisions are rendered pursuant to the IDEA, Section 504, M.G.L. c. 71B and 30A.

## STATEMENT OF FACTS

**11.**    John Doe, born in 2001, is a child with a disability who has been found eligible for special education services. John Doe was diagnosed with Pervasive Developmental Disorder – Not Otherwise Specified (PDD-NOS) in July, 2005 when he was four years old after his needs were not able to be met in his community based preschool program the prior school year.

12.     John Doe was enrolled in an integrated preschool classroom at the Early Learning Center located at Peter Thacher Elementary School in Attleboro, MA from September, 2005 – June, 2006 and received services via an IEP that was developed after a six week extended evaluation was conducted by the Early Learning Center in September and October of 2005.

13.     In June, 2006, John Doe's IEP team met to discuss a Kindergarten placement for John Doe. The team recommended that John Doe attend **Studley Elementary School,** which is NOT the school in his neighborhood.  This meeting was held on 6/8/2006.  During a BSEA hearing held on December 1, 2011, Maureen Morgan, Attleboro's Preschool Services Coordinator,

testified that the team considered Hill Roberts Elementary School, John Doe's neighborhood school, to be an inappropriate environment for him because of his issues with distractibility.

14.    The IEP team documented the reason for the team recommendation made on 6/8/2006 in a School District Proposal to Act, also known as an N1 form. The N1 form is the standard form Attleboro uses to comply with 20 U.S.C. (b)(3) with the content required by 20 U.S.C. (c )(1) for notifying parents of a placement decision, a revised IEP, a decision to commence or terminate services or any other action for which written prior notice is required. The N1 form states that TEAM recommended John Doe to attend Studley Elementary School, because ""[John Doe] requires a closed classroom due to increased distractibility secondary to a diagnosis of PDD".

15.    The N1 form is not itself a Team Determination of Educational Placement (also known as a PL1 form or a Placement Consent form) which is a separate form that is required by 603 CMR 28.05(7) that contains check boxes for the parents to accept or reject a proposed placement. The Team Determination of Educational Placement that resulted from the June 8, 2006 team meeting was incorporated into a revised IEP that was completed at the conclusion of the June 8, 2006 team meeting. The revised IEP was effective from 9/6/2006-10/22/2006. The end date of the revised IEP was the date of the next scheduled annual review meeting, 10/22/2006.

16.    John Doe's neighborhood school, Hill Roberts Elementary School, has an open classroom environment. That is, several classes are held within the same space with no walls separating them. The classrooms are separated by bookcases.

17.    The next closest Elementary school to John Doe's home is Studley Elementary School.

18.    The updated IEP that indicated on the Team Determination of Educational Placement page that John Doe's placement would be a full inclusion program at Studley Elementary School included a service grid indicated that the IEP included consultative services for speech and language professionals and for OT professionals, as it had since October of 2005, but did not include any consultative services by the "Insights" program staff.

19.    The School District Proposal to Act (N1 form) completed on June 8, 2006 indicates that

there were no other factors relevant to the school district decision to place John Doe away from his local school.

20.      The School District Proposal to Act (N1) makes no reference to the "Insights" program and does not state that John Doe's team considered John Doe a candidate for the "Insights" program.

21.      The Does were not provided with any document in June, 2006 that indicated that consideration of the Insights program was a factor that influenced the team decision on June 8, 2006.

22.      Sometime during the summer of 2006, Ms. Maureen Morgan, the student special education services coordinator for the Early Learning Center, called Mrs. Doe on her cell phone and informed her that John Doe would not be attending Studley Elementary School in September, that he will instead attend Willett Elementary School in Attleboro, which also has closed classrooms. Ms. Morgan did not provide an explanation for the change in placement.

23.      The Does did not oppose the change in location because they were informed that the school John Doe would attend for Kindergarten, Willett Elementary, also has enclosed classrooms. The school district provided no documentation explaining the reason for the change in location for Kindergarten from Studley Elementary School to Willett Elementary school.

24.      The change in location of Kindergarten services from Studley Elementary School to Willett Elementary School was NOT discussed in a team meeting.

25.      John Doe attended Willett Elementary school for the 2006-2007 school year for Kindergarten in a full inclusion and transportation was provided by the school district consistent with his IEP.

26.      The next annual review meeting was held on 10/17/2006 which resulted in an IEP that named a full inclusion program at Willett Elementary School as John Doe's placement. Parents accepted the IEP that was developed during the 10/17/2006 team meeting and the school district implemented it for the remainder of the child's Kindergarten school year. The IEP was scheduled to end in October, 2007.

27.      Near the end of John Doe's Kindergarten school year, in May, 2007, the principal of

Willett Elementary School at the time, Ms. Gaylene Heppe, called Mrs. Doe to say that if Mrs. Doe wanted John Doe to STAY at Willett for the following school year, Mrs. Doe would need to complete an Intra District Request form stating that John Doe's placement at Willett would be granted on a space available basis and that his parents would be responsible for transporting him. Mrs. Doe informed Ms. Heppe of the recommendation made by John Doe's IEP TEAM and informed her that John Doe was at Willett because he required closed classrooms. Ms. Heppe said that she would get back to Mrs. Doe about this issue.

28.     Ms. Heppe called Mrs. Doe again the following week and told Mrs. Doe that she had spoken with the Director of Special Education for the City of Attleboro, Ms. Sylvia Day, and that Ms. Day had told Ms. Heppe that Hill Roberts had been approved by the Department of Education as a suitable school for all children, including children with John Doe's diagnosis, so Hill Roberts was a suitable placement for John Doe. Mrs. Heppe informed Mrs. Doe that if Mrs. Doe wanted John Doe to STAY at Willett (which has closed classrooms), she would need to sign an intra district request form and the request would be considered on a space available basis. Ms. Heppe then stated that Mrs. Doe would have to follow this process each year and that John Doe's placement at Willett would be re-considered each year on a space available basis. Mrs. Doe asked why this decision was being made in May when John Doe had an IEP that went until October and his placement in his IEP was Willett. Mrs. Doe informed Ms. Heppe that she would not sign the intra-district request form. Mrs. Heppe then said that she would call a team meeting to discuss changing John Doe's placement for First Grade.

29.     Mrs. Doe consulted John Doe's psychiatrist, Dr. Kerim Munir from the Children's Hospital in Boston, who had most recently evaluated John Doe, for his opinion given John Doe's distractibility issues. Dr. Munir wrote a letter to John Doe's special education teacher and case manager, Ms. Caouette, on June 7, 2007. This letter was available to the IEP team on June 12, 2007.

30.     A team meeting to discuss John Doe's placement for first grade was held on June 12, 2007. The Does did not request this team meeting, It was the principle of Willett, Ms. Heppe, who called it.

31.    At the time of the June 12, 2007 meeting, Willett Elementary School was named as John Doe's educational placement in his IEP. John Doe's IEP was still in effect at the time of the meeting and was scheduled to remain in effect until October, 2007. The school district wanted to change John Doe's placement from Willett Elementary School which has closed classrooms to Hill Roberts Elementary School which has open classrooms.

32.    Mr. and Mrs. Doe did not request a change in placement in June, 2007 and informed Ms. Heppe (Willett Elementary School principal), during two separate telephone calls in May, 2007, that it was the school district that placed John Doe at Willett because he needed closed classrooms and that was where Mrs. Doe wanted John Doe to remain because of his continued need for a closed classroom.

33.    When Mr. and Mrs. Doe arrived at the team meeting which was held on 6/12/2007, they were presented with a form by Michelle Dickens-Weil, the SPED Coordinator for Attleboro Public Schools, who asked Mr. and Mrs. Doe to sign the form excusing a team member, Maureen Morgan. Mrs. Doe asked why she needed to excuse Maureen Morgan when Ms. Morgan had not been present at any of John Doe's team meetings for the past year. Ms. Dickens Weil replied, "because she has history with the child".

34.    Mr. and Mrs. Doe were not provided with a copy of the memo from Ms. Morgan prior the June 12, 2007 team or prior to being asked to sign the excusal form. The excusal form stated that either the excused team member's area of specialization was not being modified or discussed in the meeting or the team member supplied input to the team prior to the meeting.

35.    As soon as Mrs. Doe signed the form excusing Ms. Morgan. The Does were presented with a memo written by Ms. Maureen Morgan and dated June 5, 2007. Copies of the memo were made and distributed to team members at the June 12, 2007 team meeting.

36.    Ms. Morgan testified at the hearing held on December 1, 2011 that she did not send a copy of the memo to the parents prior to the June 12, 2007 team meeting. Ms. Dickens-Weil testified at the same hearing that she was not aware that the memo from Ms. Morgan existed prior to the June 12, 2007 team meeting. Ms. Dickens-Weil also testified that when she asked Mrs. Doe to excuse Ms. Morgan from the team meeting, she was not aware who had the memo

from Ms. Morgan and who did not have the memo from Ms. Morgan.  She also testified that copies of the memo were made at the beginning of the meeting and distributed to the team members.

37.       Ms. Morgan wrote the memo on June 5, 2007, one week prior to the team meeting that took place on 6/12/2007.

38.       Ms. Morgan stated in her memo that John Doe came to ELC (the Early Learning Center located at Peter Thacher Elementary School in Attleboro) in **September 2006**.

39.       Contrary to Ms. Morgan's statement, John Doe actually was in Kindergarten at Willett Elementary School in Attleboro in September 2006. Not at ELC.  He attended ELC in 2005-2006 school year.


40.       The memo from Ms. Morgan states that the team meeting on June 8, 2006 resulted in a recommendation that John Doe attend **Willett** and that the "primary reason" for the June 8, 2006 team decision was "because the TEAM felt he "**may be a candidate for Insights program**".

41.       Ms. Morgan's statement is false. The <u>School District Proposal to Act</u> (N1) form (also federally known as Prior Written Notice) , which was completed by Attleboro as a result of the June 8, 2006 Team meeting states that the team recommended John Doe attend **Studley Elementary School**, not Willett Elementary School, because he **<u>"requires a closed classroom</u>** due to increased distractibility secondary to a diagnosis of PDD". **The resulting IEP of the June 8, 2006 team meeting, which Ms. Morgan herself signed on June 9, 2006 named <u>Studley Elementary School</u>** as the location for his service, not Willett as Ms. Morgan claimed in her **memo.**

42.       Ms. Morgan testified at the hearing held on December 1, 2011 that **<u>she was asked to write the memo</u>** by Ms. Heppe, the former principal of Willett, or Ms. Dickens-Weil, the k-4 SPED coordinator.

43.       Ms. Morgan testified that she wrote the memo dated June 5, 2007 one year after the team meeting that the memo describes **based on her recollection of the meeting** and that she

looked at John Doe's school record when she wrote the memo.

**44.**     Ms. Morgan also testified that it is the responsibility of the chairperson of the IEP Team meetings to prepare the required documents. However when she was presented with the document that showed she was indeed the chairperson, she claimed she did not write the School District Proposal to Act (N1) form or the subsequent documents and that **she may have written the Meeting Summary document.**

45.     Ms. Dickens-Weil testified that she checked the school record and there was no documentation that referenced the Insights program prior to June, 2007.

46.     Ms. Morgan admitted at the hearing held on December 1, 2011 that there is discrepancy between her memo and the N1 form.

47.     Ms. Morgan admitted she did not send a copy of her June 5, 2007 memo to the Does.

48.     During the June 12, 2007 team meeting, Mrs. Doe informed the team that nobody on John Doe's TEAM had ever discussed the Insights program with her.

49.     Ms. Dickens-Weil, the K-4 Special Education Coordinator for the Attleboro Public Schools testified at the December 1, 2001 hearing that at the June 12, 2007 team meeting, "the team was trying to determine whether he [John Doe] needed **to stay attached to the Insights program, " which was the only way we could keep him in a placement that made his parents happy"**. Ms. Dickens-Weil admitted at the December 1, 2011 hearing that she had previously testified at the November 13, 2009 BSEA hearing that the June 12, 2007 discussion **"centered around that he [John Doe] did not require the Insights program"** and that since the team felt that he would be fine in a full inclusion program for first grade, he was supposed to go back to his home school, Hill Roberts.

50.     There is no document in John Doe's school record that references the "Insights" program other than the memo written by Maureen Morgan on June 5, 2007 and presented to the June 12, 2007 team which states that the June 8, 2006 team "was concerned that [John Doe] may be a candidate for the Insights program".

51.     John Doe was never placed in or even evaluated for the Insights program by anyone from Attleboro and the Does were never asked for their consent to evaluate John Doe for the

Insights program.

52.     Ms. Dickens –Weil testified on December 1, 2011 that the June 12, 2007 team meeting turned on the assumption that John Doe was at Willett because he was a candidate for the Insights program.

53.     During the June 12, 2007 meeting, Ms. Heppe, the principal of Willett at the time, told the team to look at Ms. Morgan's memo that John Doe was placed at Willett because he "may be a candidate for Insights" program. The Does argued that John Doe was placed away from his neighborhood school because, as his previous team recommended and documented, he required closed classrooms that his neighborhood school did not offer. Ms. Heppe told the team to look again at the memo and that John Doe not placed away from his neighborhood school because he needed closed classrooms and also she told the team they could not consider closed classrooms because Hill Roberts had been approved by DOE for all children, including those with John Doe's condition.

54.     Mr. and Mrs. Doe told the team on June 12, 2007 that they strongly disagreed with the decision to place John Doe at Hill Roberts.

55.     Mr. and Mrs. Doe were not given a notice of procedural safeguards brochure at the team meeting even though they expressed during the meeting that they strongly disagreed with the team's determination that Hill Roberts was an appropriate placement for John Doe.

56.     Mr. and Mrs. Doe were not given a Notice of Procedural Safeguards at any time during the 2006-2007 school year.

57.     The Notice of Procedural Safeguards is required under the Individuals with Disabilities Education Act and must be provided to Parents pursuant to (20 USC 1415[d]; 34 CFR 300.504; EC 56301[d] [2], EC 56321, and 56341.1[g] [1])

58.     Attleboro did not complete the required Prior Written Notice (School District Proposal to Act -N1 form) required by federal and state laws that would have informed the Does of the team's decision to change John Doe's placement to Hill Roberts and would have informed them that they have rights under Federal and State laws.

59.     Attleboro did not provide the Does with the Team Determination of Educational

Placement (also known as PL1 consent form) that would have given them the option to accept or reject (by checking the appropriate check box) the proposed placement that resulted from the June 12, 2007 team meeting.

60.        Mr. and Mrs. Doe were told verbally prior to the team meeting and during the team meeting that John Doe would not be allowed to return to Willett for First Grade unless they completed and signed an Intra District request form indicating that John Doe's placement at Willett would be considered on a space available basis and his parents would be responsible for transporting him.

61.        A copy of meeting notes was sent home from school with John Doe that described the meeting and stated "if the parents would like [John Doe] to attend Willett School, they **need to** complete the request for intra-district placement and submit it through the Superintendent's office based upon current policy". The meeting notes also stated that " [John Doe] can be successful in any inclusion classroom".

62.        The meeting notes did not include a statement that Mr. and Mrs. Doe had rights guaranteed by federal and state special education laws or information about where the Does could obtain a complete copy of the Procedural Safeguards Notice or any information on sources for Mr. and Mrs. Doe to obtain more information about their rights. The meeting notes did not contain any check boxes for the parents to use indicating that they accept or reject the placement.

63.        Mr. and Mrs. Doe were unaware that there was a process by which to request a due process hearing to review the determination of the IEP team. Mr. and Mrs. Doe were also unaware that a "stay put" provision in IDEA 2004 would have assured John Doe's continued placement at Willett Elementary pending the outcome of a due process hearing.

64.        If the school district had used the standard Massachusetts Department of Education form, the School District Proposal to Act, N1 form, as required under IDEA 2004, the School District Proposal to Act would have contained a statement that Mr. and Mrs. Doe had rights under federal and state special education laws and that there is a Notice of Procedural Safeguards that parents can refer to in order to obtain an understanding of their rights.

65.     If the school district had used the standard Team Determination of Educational Placement form, the form would have contained check boxes for "I accept the proposed placement" and "I reject the proposed placement" for the parent to indicate acceptance of or rejection of the proposed placement with a signature line for the parent.

66.     John Doe's IEP was not updated after the June 12, 2007 team meeting to reflect the new placement of Hill Roberts Elementary School, the child's neighborhood school, with open classrooms.

67.     As a result of the meeting, Mrs. Doe called the principal of Hill Roberts Elementary school and asked if she could observe a First Grade classroom to get a sense of the level of noise and visual distractions. Mrs. Doe observed several first grade classes while class was in session in June, 2007. The principal of Hill Roberts, Mr. Joseph, told Mrs. Doe that the First Grade area would be noisier the following year because there would be five first grade classrooms instead of the four that were being conducted when Mrs. Doe observed.

68.     After Mrs. Doe observed several first grade classes at Hill Roberts Elementary school in June, 2007, she signed the Intra District Request form out of concern that John Doe would not be able to function in a First Grade classroom at Hill Roberts because of the noise level. On the Intra District request form, Mrs. Doe reiterated her belief that John Doe would not be able to make academic progress in that environment (Hill Roberts) and that she disagreed with the decision made at the team meeting on 6/12/2007.

69.     Ms. Heppe, who was the Principal of Willett School in June, 2007, testified on December 1, 2011 that she received the intra-district request in June, 2007, read the parent comment on the form indicating there was a disagreement between the parent and the IEP team and did not contact the parent to explain what recourse was available to the parent if she disagreed with a team decision.

70.     John Doe subsequently attended Willett Elementary school, which has closed classrooms, for First Grade. At the next team meeting which was an annual review meeting held at Willett in October, 2007, the team determined John Doe's vision statement to be "John Doe's distractibility will decrease allowing him to complete his work within a specified time period".

71.     Mr. and Mrs. Doe transported John Doe to and from Willett Elementary School during his First Grade (2007 – 2008) and Second Grade (2008 – 2009) school years.

72.     Throughout first grade, John Doe continued to have issues with following classroom routines, distractibility, focusing and reading peer cues. John Doe's classroom teacher sent home daily reports documenting John Doe's performance in class.

73.     Each of John Doe's first grade report cards indicated that he continued to have issues with focusing and distractibility. The Term 3 (end of school year) comment on John Doe's Grade 1 report card reads "Focusing, distractibility, and impulsivity are still strong concerns for his participation in a regular classroom. Behavior needs to be addressed in grade two."

74.     Mr. and Mrs. Doe refused to sign an intra-district request for the 2008-2009 school-year when the school district requested that they do so via a phone call in June, 2008. John Doe subsequently returned to Willett Elementary school for Second Grade, the 2008-2009 school year.

75.     The school district refused to provide transportation for John Doe in the second grade, the 2008-2009 school year, so transportation was provided by his parents.

76.     In October, 2008, John Doe's special education teacher contacted his mother and told her that the school district would need to amend the current IEP to run through the end of December, 2008 so that the team would have enough time to complete assessments for re-evaluation. Mrs. Doe agreed and signed a revised IEP which extended the date to December 31, 2008.

77.     The team met on 11/10/2008 to discuss the three year re-evaluation of John Doe, in which Mr. and Mrs. Doe were provided with a Notice of Procedural Safeguards during the November, 2008 team meeting.

78.     At the meeting, The new school principal, Ms. Catherine Zinni, presented Mr. and Mrs. Doe with a copy of the school district policy on physical restraint because she said that John Doe's classroom teacher had indicated that John Doe's outbursts in the classroom were escalating in frequency and intensity and the principal wanted the Does to be aware that there was a policy for physically removing a child from a classroom if John Doe's behavior poses a

safety concern.

79.     Michelle Dickens-Weil, the K-4 SPED Coordinator for Attleboro informed the team that they were not allowed to make a finding of eligibility for special education services if they determined that John Doe was making academic progress and accessing the general curriculum.

80.     In response to a specific question by John Doe's second grade regular education teacher, Ms. Dickens-Weil told the team that behavioral, social and emotional issues, reported by several members of the evaluation team, are not qualifying factors for an IEP if John Doe is making academic progress (math and reading).

81.     As a result, Ms. Dickens-Weil told the Team the team she found John Doe ineligible for Special Education Services, despite the stated concerns of Mr. and Mrs. Doe and documentation provided by several team members indicating significant issues with social skills, behavioral issues, ability to maintain attention to task and emotional development.

82.     Ms. Dickens-Weil then requested that Mr. and Mrs. Doe sign the meeting summary form that indicated that the determination of the team was that John Doe was ineligible for special education services and indicated that Mr. and Mrs. Doe had received a copy of procedural safeguards.  The notice of procedural safeguards had been presented to Mr. and Mrs. Doe at the beginning of the meeting.  Mrs. Doe responded that she would not sign the meeting summary form because she disagreed with the finding of ineligibility for special education services and there was no notation on the form that indicated what the parents' signature means.

83.     Mrs. Doe testified at the December 1, 2011 hearing that she refused to sign the form because there was no indication on the form what the parent's signature means and the form said that the child was ineligible for special education services.

84.     On November 14, 2009, Mr. and Mrs. Doe received a Termination of Service notice from the school district.

85.     The Does compiled meeting notes of the reevaluation meeting and mailed a copy to Mrs. Catherine Zinni, the new principal of Willett, asking her to add it to John Doe's school record.

86.     Ms. Zinni then contacted Sylvia Day to ask her to meet with her and Mr. and Mrs. Doe to discuss their concerns and the determination of ineligibility for special education services.  Mrs.

Zinni and Ms. Day met with Mr. and Mrs. Doe the following week and Ms. Day agreed to call another team meeting to address the concerns of Mr. and Mrs. Doe.

87.     At a subsequent meeting held on 12/4/2008 which, at the request of Mr. and Mrs. Doe Ms. Dickens-Weil did not attend, the finding of ineligibility for special education was reversed and John Doe was granted classroom support, speech and language therapy and counseling services to address conversational skills, behavioral issues and social skills development and Willett was named as John Doe's educational placement.  The IEP states "if the student is placed away from the local school, transportation will be provided".  When Mrs. Doe asked the team about providing transportation because John Doe requires a school with enclosed classrooms, Ms. Sylvia Day again reiterated that "Hill Roberts has been approved for all children, even children with John Doe's diagnosis so Hill Roberts is a suitable placement for him" and transportation will not be provided for John Doe to attend Willett.

88.     An IEP was developed as a result of the 12/4/2008 team meeting.  At the team meeting, Mrs. Doe inquired about the school district providing transportation to John Doe since the team agreed that his placement would be Willett Elementary School and the school was more than six miles from John Doe's home.  Mrs. Doe quoted the school district policy that children living more than 1.5 miles from their assigned school will be provided with transportation.  Sylvia Day responded that the school district would not provide transportation for John Doe to attend Willett.

89.     Parents partially accepted the IEP developed in December, 2008 and rejected the lack of transportation, the decrease in classroom support and the omission of a social skills group.

90.     On May 3, 2009, the plaintiffs filed a Request for Hearing with the BSEA against Attleboro. The plaintiffs requested:

• Addition of a closed classroom accommodation to John Doe's IEP

• Transportation to and from Willett Elementary school five days per week provided by the Attleboro Public Schools.

• Reimbursement to Mr. and Mrs. Doe for providing transportation to and from Willett Elementary during First and Second Grade.

91.     The hearing request asserted there was a pattern of the school district using misinformation and intimidation to deny John Doe necessary services and accommodations (see the Initial Hearing Request letter dated May 3, 2009 from the BSEA record).

92.     At a pre-hearing conference on June 10, 2009, the hearing officer ordered the school district to convene an IEP team (as the parents had repeatedly requested in the preceding weeks) to address a recent escalation in behavioral issues reported by John Doe's teachers.

93.     At a subsequent IEP team meeting held on June 15, 2009, John Doe's IEP team determined that John Doe required placement in a substantially separate program in order to continue to make effective progress in general education. The team recommended placement in a program that is housed in a school with enclosed classrooms. The IEP that resulted from the team meeting grants transportation to and from the program.

94.     On August 6, 2009, parents were informed by their attorney that the hearing officer had stated on a conference call earlier that day that she would not consider the issue of adding an enclosed classroom accommodation to John Doe's IEP nor would she consider the issue of providing future transportation because the IEP developed in June, 2009 contained those provisions.

95.     The Does told their attorney that they wanted to proceed to a hearing on the remaining issue which was reimbursement for transportation that they provided during the 2007-2008 school year and the 2008-2009 school year.

96.     On August 21, 2009, one business day before the hearing scheduled for August 24, 2009 Attleboro file a motion to postpone the hearing, in which they stated their reasons as 1) 2009 Attleboro thought the parties were going to settle 2) Attleboro's intent to file a Motion to Dismiss. 3) The parents' attorneys agreed to the postponement and 4) Attleboro did not receive discovery until the 20th of August, On the same day, one of the Plaintiffs' attorneys submitted a response opposing the Motion to Postpone the hearing. She later submitted another response assenting to the Motion. The BSEA hearing rules states:

**Except in extraordinary circumstances, a request for postponement of a hearing must be submitted to the Bureau, in writing, at least five (5) business days in advance of the hearing date.**

97.     In the Administrative Record is an affidavit from the process server who stated that he delivered the documents on August 19th, 2009 and which stated that Ms. Lyons (Attleboro's second attorney) told him there was no need for the documents because the parties were in settlement negotiations. Also, in the Administration Record is Ms. Tate's (Attleboro's attorney) response that the process server was wrong about the date and that she remembers because when she saw the process server she thought he was bringing subpoenas and she held a 36 minute meeting with her colleagues to discuss the subpoenas.

98.     On August 24, 2009, plaintiffs faxed a letter to the BSEA that stated they were proceeding pro se on the remaining issue of reimbursement for transportation.

99.     On September 17, 2009, Attleboro submitted a Motion to Dismiss with Prejudice, and. on September 21, 2009, parents submitted a response to Attleboro's Motion to Dismiss.   In their response, the Does made several arguments to support their allegations that Attleboro coerced the Does into signing an intra-district request and that Attleboro discriminated against John Doe because of his disabilities. The Does provided factual matters alleging that Attleboro had provided **false information** to the IEP team during the team meeting, had committed **procedural violations** and specified specific violations of state and federal special education law relative to the decision to place John Doe at Hill Roberts Elementary School, a school that could not provide an enclosed classroom.

100.    On September 29, 2009, the hearing officer issued a ruling granting Attleboro's Motion to Dismiss for the 2007-2008 school year but not for the 2008-2009 school year.

101.    On November 13, 2009, a hearing was held at the BSEA office in Malden, MA after which the hearing officer ruled that Attleboro was responsible for providing transportation for the 2008-2009 school year and ordered Attleboro to reimburse John Doe's parents at the state mileage rate for providing transportation for 174 days during the 2008-2009 school year.

102.    Under IDEA, prevailing parents are entitled to recover costs including attorneys' fees.

103.    On December 21, 2009, the Does filed a complaint in U.S. District Court seeking judicial review of the Hearing Officer's ruling granting Attleboro's Motion to Dismiss and seeking

an award of costs and attorneys' fees for litigating the case at the BSEA based on the status of being the prevailing party at the BSEA because they had obtained from the BSEA an order for Attleboro to reimburse parents for transportation for the 2008-2009 school year. The complaint filed in U.S. District Court also included a demand for costs incurred by the parents in filing the complaint in U.S. District Court.

104.     The case number for the Complaint that the parents filed in U.S. District Court was originally 1:09-cv-12127-GAO and was subsequently updated to 1:09-cv-12127-DJC when the case was reassigned from U.S. District Judge George A. O'Toole to U.S. District Judge Denise J. Casper.

105.     Under IDEA 2004, an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer.

106.     The Does prevailed at the BSEA in their claim for reimbursement for transportation for 2008-2009 school year and are therefore entitled to recover costs and attorneys' fees under IDEA.

107.     In response to the Complaint filed in U.S. District Court, Attleboro admitted that the Does were not provided with a Notice of Procedural Safeguards at the June 12, 2007 team meeting, and were not provided with the Prior Written Notice School District Proposal to Act- N1 form informing them of the team decision on June 12, 2007 or of their rights relative to the decision but that they were given "meeting notes".

108.     On June 29, 2010 Attleboro sent the Does a letter offering to settle the civil action that parents had filed in U.,S. District Court which sought judicial review of the hearing officer's ruling granting the Motion to Dismiss and which also sought an award of costs and attorneys' fees that the parents had incurred in litigating the case at the BSEA and in U.S. District Court. The offer by Attleboro was to reimburse the parents for the cost of providing transportation during the 2007-2008 school year at the state mileage rate. The offer made by Attleboro did not include the costs and attorneys' fees.

109.     On July 7, 2010 the Does replied to Attleboro's attorney, Ms. Tate with letter stating

that the offer to settle the case was rejected because it fell short of the parents' demands which included costs including attorneys' fees that the Does had incurred in litigating the case before the BSEA and in filing the complaint in U.S. District Court.

110.    On July 12, 2010 Attleboro's attorney, Ms. Tate, sent the Does a letter threatening to sue the parents for Attleboro's attorneys' fees should Attleboro prevail in the case.

111.    On July 21, 2010 the Does replied to Attleboro's attorney stating that they were the prevailing party as they had secured an order for reimbursement of the cost of transportation for the 2008-2009 school year and that they would not be intimidated by Attleboro's threats.

112.    On August 31, 2011, U.S. District Judge Denise J. Casper issued an order remanding the parents' claim for reimbursement for the 2007-2008 school year to the BSEA with an order for the hearing officer to apply the correct legal standard in ruling on the Motion to Dismiss.  In the same order, the U.S. District Judge dismissed, without prejudice, the parents claims for costs and attorneys' fees as "**unripe**" to be renewed at the conclusion of the BSEA proceedings because "the extent to which the Does are the prevailing party has not yet been established".

113.    In her decision, U.S. District Court Judge Casper wrote:

 "…**and that the Does were not notified of the existence or content of the written input until they arrived at the June 12, 2007 Team meeting. See AR 5. This allegation, if true, would violate the statutory requirements governing Team meetings, see 20 U.S.C. §1414(d)(1)(C)(ii)(II),11 and would, at a minimum, bear on the plausibility of the Does' allegation that they were "coerced" into signing an Intra District Request and were not provided with the full opportunity to which they were statutorily entitled to challenge or appeal the Team's decision that John Doe could be successful at Hill Roberts."**

114.    On September 26, 2011, BSEA Hearing Officer Rosa Figueroa conducted a telephone conference call with the Does and Attleboro's attorneys during which a hearing date of December 1, 2011 was set.

115.    In November 2011, the Does submitted a written request for the BSEA to issue subpoenas to Lauren Mulready who was John Doe's case manager and preschool teacher in June, 2006 and who attended the June 8, 2006 Team Meeting, Maureen Morgan who was the preschool services coordinator for Attleboro Public Schools and who is the author of the memo that "supposedly" describes the events of June 8, 2006 Team Meeting,  and Gayleen Heppe, the former principal of Willett Elementary School.  Attleboro submitted a Motion to quash the

subpoenas of Laruen Mulready and Maureen Morgan. The Does filed their opposition to the Motion to quash the subpoenas of two witnesses stating that the two witnesses were key witnesses to the case, that Maureen Morgan supplied the team with false information in her memo, and that Ms. Mulready was John Doe's preschool teacher and case manager and she could rebut Ms. Morgan's testimony on whether John Doe's Team had ever discussed the Insights program since she had attended the 6/8/2006 meeting.

116.    The hearing officer issued an order granting the Motion to Quash the subpoena of Lauren Mulready stating that Ms. Mulready had nothing to offer concerning 2007-2008 school year.

117.    Mrs. Doe objected on December 1, 2011, just prior to the hearing, to not being allowed to compel the testimony of Lauren Mulready. The hearing officer responded that she was going to stay her ruling granting Attleboro's Motion to Quash the subpoena of Ms. Mulready but, if after taking the testimony of all of the other witnesses, Mrs. Doe still needed to obtain the testimony of Ms. Mulready, the hearing officer would allow Mrs. Doe to call her on the phone to provide testimony later in the day.

118.    Later that day, around 4:30 pm, the Does once again objected to the hearing officer's quashing of Ms. Mulready's subpoena, making strong argument that Ms. Mulready's testimony was absolutely necessary to rebut Ms. Morgan's testimony. The hearing officer stated she would allow Ms. Mulready to testify by phone but the hearing officer made it clear that she was not going to listen to anything Ms. Mulready going to testify to because she already heard from Ms. Morgan what happened at the team meeting on 6/8/2006. The whole conversation and proceeding were recorded both on tape and by the court stenographer. Given the hearing officer's position and that Ms. Mulready had already left the school premises and no access to the evidence, the Does chose to decline the offer.

119.    On November 21, 201, parents sent exhibits and witness lists to the Hearing Officer and sent a copy to the attorney for Attleboro and on November 23, 2011, Attleboro submitted copies of its exhibits and witness list to the hearing officer and provided a copy to the parents.

120.    The exhibits Attleboro presented consisted of two letters. The first letter, dated June

29, 2010, was an offer to settle the civil action in U.S. District Court in which parents were seeking judicial review of the Hearing Officer's ruling granting Attleboro's Motion to Dismiss and seeking an award of costs and attorneys' fees for litigating the case at the BSEA. The offer was to reimburse parents for the cost of transportation for the 2007-2008 school year and did not include an offer to pay the parents' costs and attorneys' fees. The second letter was the Does' response to Attleboro's offer to settle in which the parents explained that the offer was rejected because it fell short of the parents' demands because it did not include an offer to pay "all expenses incurred in litigating this case, including attorneys' fees".

121. The hearing officer issued an order for Attleboro to "clarify" whether its offer to settle the case in U.S. District Court had been withdrawn and ordered parents to specify what they considered their litigation expenses to be and what legal basis they claimed to recover their expenses from Attleboro through the BSEA.

122. Parents complied with the order by responding in writing that they were not seeking an award of costs and attorneys' fees from the BSEA but that they intended to seek recovery of their costs and attorneys' fees from Attleboro in U.S. District Court because they prevailed at the BSEA in getting reimbursed for the cost of transportation for the 2008-2009. The Does indicated that they took the Hearing Officer's order for clarification as a hint by the Hearing Officer for Attleboro to make a new offer. They also filed a motion to strike the letters as they pertained to the bigger case at the U.S. District court, in which the Does were seeking a review of the dismissed part of their claim, that is, reimbursement for transportation for 2007-2008 school year, as well as recovery of all costs, including their attorneys' fees.

123. On November 29, two days before the hearing, Attleboro replied to the Hearing Officer's order to clarify whether the offer had been withdrawn by filing a Motion to Dismiss. In the cover letter to the Motion to Dismiss, Attleboro stated it would pursue its attorneys' fees if the Does chose to proceed with hearing.

124. Parent filed a written opposition to the Motion to Dismiss on November 30, 2011 providing case laws where the U.S. District Court found that the hearing officer could not dismiss a case based on rejection of the settlement offer. The Hearing Officer claimed on December 1,

2001 she did not get the Does' response as it was faxed late the previous evening (which was the same day the Does received the Motion to Dismiss in the mail).

125.     On November 29, 2009, Ms. Heppe, the former principal of Willett, through her attorney, Ms. Stein, filed a motion to testify by telephone. The Does responded via a faxed letter to all parties, objecting to the motion on November 30, 2011, the same day they received the motion.

126.     The hearing was held on December 1, 2011. Prior to the commencement of the hearing, the hearing officer conducted a hearing on different motions before her. First, she told the Does that she had granted Ms. Heppe's Motion to testify by telephone the day before. Then she read a letter submitted from Ms. Heppe's attorney the day before thanking her for letting Ms. Heppe testing by phone. The Does were not aware that such motion had been granted one or two days earlier, the hearing Officer never communicated the Does prior to the hearing date. The Does objected.

127.     The second motion entertained by the Hearing Officer was the Does' Motion to strike the offer of settlement from the record. Mrs. Doe argued that "the offer is irrelevant because it was made to settle a lawsuit filed in U.S. District Court and, until yesterday afternoon, Attleboro had not actually made an offer to the parent relative to the current proceeding." Attleboro's attorney responded "the reason my motion to dismiss clarified that the officer [sic] was still open was because it was not clear to me until reading the ruling that the parents were not aware that this was somehow off the table".

128.     The third motion was the Motion to Dismiss submitted two days earlier by Attleboro. The hearing officer heard oral arguments on Attleboro's Motion to Dismiss. The hearing officer then stated that she would allow the hearing to go forward and if Attleboro wanted to renew its Motion to Dismiss at the conclusion of the hearing, it could do so. The attorney for Attleboro then asked if the offer of settlement was rejected. Mr. Doe responded that there was n**o written offer** because the offer that Attleboro was referring to was an offer to settle the complaint in U.S. District Court and did not apply to the current BSEA case. The Hearing Officer stated "As of right now, there was clarification in the documents submitted by Attleboro, and there is an offer on the

table that Attleboro is presenting to you. You're simply called to respond yes or no with respect to the offer for reimburse you for the transportation of student for the 2007-2008 school year. That's the only thing that is on the table; is that correct". To which Attleboro's attorney responded "correct".

129.     The hearing officer told the Does that there were ramifications if they chose to proceed with the hearing.

130.     Mr. Doe then asked if Federal Rules of Civil Procedure apply in BSEA proceedings. The hearing officer responded that the BSEA is not a court, it is a forum and "has much more relaxed rules". Mr. Doe responded that "as far I'm concerned, that the offer was made in federal court and is not applicable here. Even though you say it's admissible, I reject it". Mrs. Doe then responded that the Doe's only received this "clarification" the prior afternoon and had not had an opportunity to research what the impact of accepting or rejecting the offer would be on the claims that he U.S. District Judge dismissed without prejudice to bring back to U.S. District Court at the conclusion of the BSEA proceedings. The attorney for Attleboro then moved to postpone the hearing. Mrs. Doe objected to any further postponement. The Hearing Officer then told Mrs. Doe that she could not "have it both ways" that if the hearing proceeded on December 1, 2011, it was under the assumption that the offer made by Attleboro was rejected, "so it is really your call". Mrs. Doe objected to being told that she had to respond to the offer on the spot or agree to postpone the hearing. While Mrs. Doe was making her objection, the hearing officer interrupted her and said that if Mrs. Doe wanted the hearing to go forward as scheduled, it would.

131.     During Mrs. Doe's testimony, the Hearing Officer interrupted Mrs. Doe several times. Every time Mrs. Doe mentioned the June 12, 2007 meeting, the Hearing Officer cut her off and stated that Mrs. Doe said June 2012. The Hearing transcript clearly show that Mrs. Doe never said June 2012. This was an attempt by the Hearing Officer to make Mrs. Doe lose her train of thought during her testimony.

132.     At the hearing, Attleboro maintained that it did not propose a change of John Doe's placement when it proposed to change John Doe's school to Hill Roberts and that Attleboro had the right to change the location of services.

133.     The Does argued that Attleboro's proposal was indeed a change in placement according to the Federal Office of Special Education (OSEP). They cited OSEP letter to Tennessee in which OSEP stated "**the [district] is required to maintain the child in an educational program that is substantially and materially similar to the former placement**". In this case, they stated the two locations were not substantially and materially similar because Willett offers closed classrooms and Hill Roberts doesn't and John Doe's IEP had determined on June 8, 2006 that he "requires a closed classroom". Therefore, the Does concluded that Attleboro's proposal was in fact a change in placement.

134.     The Does maintained that they were coerced by Attleboro into signing an intra-district request to circumvent their responsibility to provide John Doe with transportation and that the mechanisms of coercion were providing false information to the IEP team, threatening to send John Doe to a school with open classrooms unless the parents agreed to provide transportation and committing procedural violations that resulted in a denial of FAPE.

135.     On December 16, 2011, the hearing officer issued a decision in which she ruled that "parents are not entitled to reimbursement for the 2007-2008 school year". In her decision, the hearing officer named the Does former attorney by first name and last name (which is the same as Mr. Does last name) and wrote in her decision that the attorney was the sister of Mr. Doe.

136.     The Hearing Officer wrote in her decision that during the 2007-2008 school year Attleboro offered parents reimbursement for transportation. There is no evidence to support the Hearing Officer's conclusion and no one from either party testified to that fact. The Does testified that in November 2008, after the Team found John Doe ineligible to receive special education services, Attleboro's Director of Special Education told parents they **could apply for scholarship** for transportation if they met income based criteria. November 2008 falls in the 2008-2009 school year, not 2007-2008 school year. Besides, applying for scholarship, if parents meet the income criteria and an offer of reimbursement are totally different.

137.     Ms. Day, the former director of special education in Attleboro, testified at the hearing held on November 13, 2009 that she first met the Does in November 2008 and she told them they were welcome to APPLY for "scholarship"  to transport John Doe **if they met the income criteria**

**and couldn't afford to pay for fee for service transportation.**

138.    Attleboro never offered funding for transportation in 2007-2008 school year.

139.    Mother testified during the December 1, 2011 hearing that parents responded to Attleboro's offer by stating "we don't need a scholarship**. All we need is for you to IMPLEMENT the IEP as it was written**."

140.    Hearing Officer Figueroa stated in her decision that the Does did not need the Team Determination of Educational Placement that contains check boxes for the parent to either accept or reject the placement from Attleboro which is required by 603 CMR 28.05(7) to reject the proposed placement that resulted from the June 12, 2007 meeting because they could have consulted with the Mr. Doe's sister who was an attorney practicing in Massachusetts. The Hearing Officer named John Doe's aunt in her published decision, who has the same last name as John Doe, by first name and last name.

141.    The hearing officer made an erroneous factual finding that the June 8, 2006 Team agreed that the beginning of Student's kindergarten year in the inclusion program would be used as a six week Extended Evaluation period. This is FALSE and entirely made up by the hearing officer. There was never an extended evaluation or a recommendation for an extended evaluation of John Doe in 2006 or 2007. Neither the documentary evidence, nor testimonies by either the Does or Attleboro make such assertion. The Hearing Officer repeated this " six week evaluation period" in several of her facts simply to support her predetermined conclusion.

142.    The Hearing Officer did not inform the parties that she was taking administrative notice of the fact that Mr. Doe's sister is an attorney. The hearing officer did not ask the parents why they did not consult with Mr. Doe's sister was is attorney in June, 2007 when they disagreed with the team decision to place John Doe at Hill Roberts.

143.    Because the Hearing Officer did not comply with BSEA Rule  X(C )(5) and inform the parties that she was taking administrative notice of the fact that Mr. Doe's sister is an attorney in Massachusetts, the parents were denied the opportunity to provide relevant sworn testimony that they had not revealed John Doe's diagnosis to anyone in Mr. Doe's family at the time of the June 12, 2007 team meeting.

144.     The Hearing Officer determined that the Does' claim for reimbursement for 2007-2008 school year was moot because they rejected the Attleboro's "settlement offer".

145.     The Does received an offer of settlement during the pendency of their case in the U.S. District Court and rejected the offer because Attleboro offered to reimburse the Does for providing transportation for 2007-2008 school year but not for the costs and attorneys' fees they incurred in their litigation which was part of the request for relief. The Does were therefore justified in rejecting the settlement offer in July 2010.

146.     There was no subsequent Written Settlement Offer by Attleboro after they rejected the initial offer made by Attleboro in June, 2010.

147.     On December 16, 2011, parents had not received the written decision on the BSEA but found the decision posted publically on the BSEA web site, In her decision, the Hearing Officer stated that even though the Does were not provided with the prior written notice or notice of procedural safeguards, they could have consulted with John Doe's aunt, who has the same last name as John Doe, because she is an attorney practicing in Massachusetts.

148.     Hearing Officer stated that parents claimed that Dr. Munir's input was negated by the information in Ms. Morgan's memo supplied by Attleboro.

149.     However, the hearing transcript shows that the Does claim was that the Doe's input, that John Doe was placed away from his neighborhood school, Hill Roberts, was because his team determined that he requires a closed classroom, was negated by the false information in Ms. Morgan's memo.

150.     The Hearing Officer in her decision, citing Black's Law Dictionary, defined the word "coercion" as "**Compelled to compliance, constrained to obedience, or submission in a vigorous or forcible manner.**". However, according to Black's Law Dictionary web site http://blackslawdictionary.org/coercion/ , the word coercion is defined as follows:

**"Compulsion ; force; duress. It may be either actual, (direct or positive.) where physical force Is put upon a man to compel him to do an act against his will, or implied, (legal or constructive.) where the relation of the parties is such that one is under subjection to the other, and is thereby constrained to do what his free will would refuse. State v. Darlington, 153 Ind. 1, 53 N. E. 025; Cliappell v. Trent, 00 Va.**

**S49, 19 S. E. 314; Radicli v. llutohins, 95 U. S. 213, 24 L. Ed. 409; Peyser v. New York, 70 N. Y. 497. 20 Am. Rep. G24; State v. Boyle, 13 R. I. 53S."**

151.     IDEA does not permit the hearing officer to declare a claim moot just because the plaintiffs do not accept a settlement offer.

152.     On December 16, 2011, Mrs. Doe emailed and called the BSEA demanding that the information that identified the name and exact familial relationship of the parents' attorney and the student be redacted from the BSEA web site as it was a violation of the minor child's right to confidentiality. The document was removed from the BSEA web site a few hours later.

153.     The Does received the original decision, which contains the name of John Doe's aunt, on December 22, 2011 and a modified document without the name of John Doe's aunt on December 27, 2011.

154.     Parents now file this request for judicial review of the hearing officer's December 16, 2011 decision.

## **CLAIMS**

## COUNT I: **ATTLEBORO COMMITTED PROCEDURAL VIOLATIONS RESULTING IN DENIAL OF FAPE, SINGLED OUT THE CHILD AND DISCRIMITED AGAINST HIM BECAUSE OF HIS DISABILITIES**

155.     The Does hereby incorporate by reference all preceding paragraphs.

156.     Neither the IDEA, nor Massachusetts Special Education laws permit a school district to place a child away from his local school to be next to a program just in case he or she may be a "candidate" for that program. The notion that Attleboro placed John Doe at a school other than his neighborhood school just because He "may be a candidate for the Insights program" is simply a lie Attleboro used to deceive his team.  Attleboro misled the Team at the June 12, 2007 meeting into believing that John Doe was placed away from his neighborhood school not because of his need for enclosed classroom but because he "may be a candidate for the Insights program".

157.    Ms. Morgan lied in her memo about the reason John Doe was placed away from his local school and Attleboro maintains that John Doe was initially placed away from his local school was because his pre-school team was concerned he "may be a candidate from the Insights program. John Doe's first grade reports and his first grade teacher daily notes, both of which are part of the administrative record clearly John Doe had worsened in first grade. Yet, Attleboro never evaluated him or placed him for the Insights program, which according to Attleboro's story was the primary reason for his placement at Willett.

158.    By not providing the Does with a copy Ms. Morgan's memo prior to the 06/12/2007 team meeting or prior to asking the parents' to excuse Ms. Morgan from the 6/12/2007 team meeting and basing the discussion of the meeting on the memo's input, Attleboro violated 20 U.S.C. §1414(d)(1)(C) and significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a free appropriate public education;  Attleboro claims it sent the procedural safeguards notice several times during throughout the year. However, Attleboro cannot produce a single document to prove their point. Attleboro has always documented when they provided the Notice to the parents. They did so in **2005**, 2008, 2009, 2010 and in 2011 but not in 2006 or 2007. Besides, IDEA requires school district to provide the Notice only once a year.

159.    By not providing the Does with a Notice of Procedural Safeguards, Not completing the Prior Written Notice (School District Proposal to Act -N1 form) and not providing the Does with the Team Determination of Education Placement consent form, Attleboro violated  20 U.S.C. §1415 and 603 CMR 28.050 et. Seq. The Does were prevented from effectively participating in the decision-making process of their child's IEP.

160.    Attleboro and its attorneys knowingly entered a document with false information, Ms. Morgan's memo, into evidence and used the false information in response to the Does appeal at the BSEA. The Does will leave it up to the court to make its own conclusion on when Defendants and their attorneys enter into evidence documents they know contain false information.

161.    Attleboro offered the parents an ultimatum in June, 2007 that they either sign an intra-district request form stating that the parents would be responsible for transporting John Doe to

Willett Elementary School or the school district would place John Doe in a school that could not provide an environment that the school district had acknowledged John Doe requires because of his disability (please refer to Parents' Exhibit 12 – Meeting Notes compiled by the Attleboro Public Schools and Parents' Exhibit 7 – Notice of School District Proposed Action). Mr. and Mrs. Doe were told that they should sign the intra-district request form "as soon as possible" because the First Grade slot at Willett may not remain available for John Doe. Therefore, the parents were given a deadline and offered a choice between a free public education and an appropriate education, but were not offered both. Parents opted to ensure that John Doe received an appropriate education. Mr. and Mrs. Doe maintain that they were coerced into signing the intra-district request form for the 2007-2008 school year to ensure that John Doe would receive an appropriate education. The intra-district request form resulted in a denial of a free appropriate public education because it resulted in the cost of transportation being shifted to Mr. and Mrs. Doe thus denying John Doe a free appropriate public education.

162.     John Doe's IEP has language that states "if [John Doe] is placed away from the local school, transportation will be provided". Attleboro chose to manufacture a document (Ms. Morgan's memo) with false information and presented it to the team in order to circumvent its responsibility to provide John Doe with transportation.

163.     Attleboro refused to provide transportation for John Doe to attend Willett School because his disability requires that he attend a school other than his local school. The school district intentionally provided false information to the IEP team (the memo from Maureen Morgan and the instruction from Michelle Dickens-Weil that the team was not allowed to make a recommendation of an enclosed classroom unless John Doe demonstrated that he could not succeed in an open classroom environment) in order to direct the team's decision so the school district could shift the cost of transportation onto the parents.

164.     The school district provides transportation to all children living at 1.5 miles away from school they attend. John Doe home is 6.2 miles away from Willett Elementary school, the school he attended in 2006-2007, 2007-2008, and 2008-2009 school years. John Doe's neighborhood school, Hill Roberts is 2.3 miles away from his home. Attleboro singled out John Doe and refused

to transport John Doe. Therefore Attleboro discriminated against John Doe because of his disabilities.

165.     Attleboro placed John Doe away from the local school in 2006-2007 school year because the team determined his neighborhood school was not appropriate for John Doe because he required closed classrooms due to his PDD and his distractibility (N1 form and Ms. Morgan's testimony). Additionally,  John Doe's IEP , which states the school is responsible for transportation if the child is placed away from his local school,  Attleboro did not fully implement John Doe's IEP which was in effect at the time of the June 12, 2007 meeting, and had an end date in October, 2007.

166.     Attleboro did not consider the potential harmful effect of the open classroom environment when it proposed sending him to his neighborhood school.  This was a violation of Massachusetts special education 603 CMR 28.06 (2) (b) which states:

**"The placement selected by the Team shall be the least restrictive environment consistent with the needs of the student. In selecting the least restrictive environment, consideration must be given to any potential harmful effect on the student or on the quality of services that the student needs."**

The meeting notes drafted by Attleboro that summarize the 6/12/2007 team meeting state "He [John Doe] has not had the opportunity to be successful in the open school environment". The school district informed Mr. and Mrs. Doe in the 6/12/2007 team meeting that Hill Roberts has been approved by DOE for all children, including children with John Doe's diagnosis so unless he demonstrates that he cannot succeed at Hill Roberts, the team cannot consider a placement at another school.

167.     In stating that the team would not consider placement at a school other than Hill Roberts unless John Doe failed to make effective progress at Hill Roberts, the team violated 603 CMR 28.06 (2) (b) by not considering the harmful effect of the open classroom environment on the quality of the services that John Doe would receive.  During the June, 12, 2007 meeting, Mr. and Mrs. Doe made sure that the team was aware of the recommendation made by John Doe's team in June, 2006 to place John Doe in a school with enclosed classrooms and that the team was aware of a written recommendation from a child psychiatrist who had evaluated John Doe

two months earlier and also recommended an enclosed classroom (Parents' Exhibit 14). John

Doe's team on June 12, 2007 refused to consider either recommendation. The meeting notes

drafted by the school district make no mention of either recommendation even though Mr. and

Mrs. Doe called the team's attention to both documents during the meeting.

168.     The Does argue that Attleboro's threat to change John Doe's educational placement in

June, 2007 was for the purpose of circumventing their responsibility to provide transportation

under 603 CMR 28.05(a)(1) and in violation of 603 CMR 28.05(5)(c) states:

**"In no event shall a school district allow transportation considerations to influence,
modify, or determine the educational program required by any student in need of special
education."**

As evidence, we offer the fact that Attleboro manufactured a document to provide false

information to John Doe's IEP team about the reason for his placement away from his local

school (the memo from Maureen Morgan) rather than referring to the N1 form in the school record

that was completed at the time the placement decision was made (Parents' Exhibit PE 7) and

coerced Mr. and Mrs. Doe into signing a document that shifted the cost of transportation onto the

parents. As a result of the parents signing the document, John Doe was allowed to remain in his

placement at the Willett School.

169.     By threatening to sue the parents for attorneys' fees if **they chose to proceed with**

**the hearing**, Attleboro and its attorneys violated the Does' right to a due process.

.

## COUNT II – **ABUSE OF DISCRETION AND ABUSE OF POWER BY HEARING OFFICER**
## **ROSA FIGUEROA**

170.     The Does hereby incorporate by reference all preceding paragraphs.

171.     The Administrative Procedure Act allows the Presiding Officer**, if no Party objects**, to

designate that all or a portion of a hearing be conducted with one or more participants situated in

different locations and communicating through the medium of one or more telecommunication

devices 801 C.M.R. 1.01 (12). By granting Ms. Heppe's Motion to Testify by Phone over  the

Does' opposition to the motion, Hearing Officer Rosa Figueroa violated 801 CMR 1.01(12) and

therefore abused her power.

172.    By Granting Ms. Heppe's Motion to Testify by Phone without the Does' knowledge and accepting communication from Ms. Stein, the attorney for Ms. Heppe, prior to the hearing and without the Does' knowledge, Hearing Officer Figueroa engaged in **Ex Parte communication** and therefore abused her power. The hearing officer admits communicating with Ms. Stein and that she communicated with her "to get things moving along" but she certainly had the Does' phone number and she never called the Does, and the Hearing officer never make a written ruling on Ms. Heppe's Motion to Testify by Phone. She waited until the day of the hearing to let the Does know of her ruling granting Ms. Heppe's Motion.

173.    Hearing Officer Rosa Figueroa denied the Does the right, guaranteed under 34 CFR 300.512(2), to confront and compel the attendance of a key witness when she quashed the subpoena of Ms. Mulready. Ms. Figueroa knew Ms. Mulready had information that would contradict Ms. Morgan's statements. She waited until 4:30 pm, when Ms. Mulready had left the school premises before she told the Does she would allow her testimony by phone. By then, the Does had declined the offer because Ms. Figueroa made it clear she was not going to consider anything Ms. Mulready would have testified to in addition to the fact that Ms. Mulready was not aware that there was a hearing in Attleboro and she did not have the benefit like other witnesses to view the documents to refresh her memory. Therefore, by violating 34 CFR 300.512(2), Hearing Officer Figueroa denied the Does the right to a fair and impartial hearing.

174.    Hearing Officer Rosa Figueroa denied the Does the right, guaranteed by BSEA Rule X.C .5, Administrative Notice, to provide the materiality of the fact that Mr. Doe's sister is an attorney in Massachusetts. She did not ask the parents if Mr. Doe's sister was aware of John Doe's diagnosis. Because the Doe's had not revealed John Doe's diagnosis to Mr. Doe's family, the fact that Mr. Doe's sister is an attorney is immaterial. The Hearing Officer did ask when was the first time the Doe's consulted anyone regarding their rights relative to appeal at the BSEA and to which Mrs. Doe replied, November, 2008, which incidentally, is when they received the procedural safeguards notice in a team meeting.

175.    By claiming she doesn't know the difference between the Prior Written Notice (Notice

of School District Proposed Action or N1 form) , which informs the parents of the reason for Team decision and informs them of their rights under state and federal laws, and the Team Determination of Education Placement, which is the consent form that gives the parents boxes to check to accept or reject the proposed placement, Hearing Officer Figueroa again shows she is incompetent, biased or both.

176.    Despite the fact that Ms. Morgan's memo contradicts the content of the federal and state mandated Prior Written Notice prepared by Attleboro, which states that the John Doe requires closed classroom and named Studley as his location of servers,  and the IEP that resulted from the 06/08/2006 team meeting, which 1) named Studley Elementary School as the John Does' location of services, rather than Willet as the memo states and  2) contained no consultative services for Insights Program staff or even consultative services for a special education teacher, and despite Ms. Morgan's own admission that there was indeed discrepancy between her memo and the school record, and despite that fact that there is no document in the John Doe's school record other than Ms. Morgan's memo that references the Insights program and despite the fact that Ms. Morgan herself testified that the N1 form and the IEP are the two ways that school district communicates to parents what decisions were made in a team meeting, Hearing Officer Rosa Figueroa found that she was not convinced that Ms. Morgan's memo contained false information.  This clearly shows bias and prejudice by the Hearing Officer.

177.    Hearing Officer Figueroa refused to consider facts, such as not providing the Does with Ms. Morgan's input prior to the meeting, not providing the Does with Procedural Safeguards, not providing the Prior Written Notice, that support the parents claim that they were coerced into signing the intra-district request form.   Hearing Officer Figueroa determined that these violations were harmless and that the Does did not need a consent form to reject the proposed placement because the Does could have consulted with any lawyer prior to signing the intra-district request.

178.    By stating that the Does did not need the required consent form to reject the placement proposed by Attleboro because the Does could have consulted with any lawyer, including Mr. Doe's sister who is an attorney practicing in Massachusetts, Hearing Officer Figueroa effectively changed the laws established and therefore abused her power.

179.     Hearing Officer Figueroa found the IEP was reasonably calculated to provide John Doe with Free, Appropriate Public Education. The Does never questioned whether the IEP provided John Doe with FAPE. Their claim stems from the fact that there were procedural violations that impeded the parents' right to participate in the decision-making process for John Doe and the fact that the IEP was not completely implemented, specifically the provision of regular transportation was not implemented. In Ross v. Framingham School Committee, 531 US 1089(2001, the first circuit found :

**A claim that the IEP was not implemented is not analyzed in the same manner as "prong two" of the Rowley test which looks at whether or not the IEP was reasonably calculated" at the time it was adopted. It is analyzed as "prong one" procedural violation, with the threshold question being whether or not the failure to implement resulted in a denial of FAPE.**

180.     Hearing Officer Figueroa ignored case laws (A.O.ex rel. M.W v. El Paso Indep Sch Dist. (5th Cir 2010), which the Does provided, that concluded that a hearing officer cannot conclude a case moot just because a party rejected a settlement offer.

181.     At the hearing, the does argued that the Federal Office of Special Education in its famous letter to Tennessee made it clear that a change in buildings constitutes a change in placement if the two locations are not substantially similar. Yet, Hearing Officer Figueroa ignored OSEP and supported Attleboro's position that the proposal to change the location did not constitute a change in placement even though the two buildings are substantially and matterialy different.

182.     Neither IDEA nor the Massachusetts Special Education laws permit the hearing officer to attend or preside over settlement discussion and settlement discussions are not allowed to be part of the record. Yet, Hearing Officer Figueroa allowed settlement discussions, which consists of the actual offer made by Attleboro and the Does' response during the pendency of the case at the U.S. District Court to be part of the record. Not only did Hearing Officer Figueroa presided over settlement negotiations prior to the initiation of the hearing, she also was the catalyst when

she ordered Attleboro to "clarify whether the offer [July 2009] has been withdrawn". Even though there was no new written offer by Attleboro subsequent to July 2009 or even an oral offer, Hearing Officer Figueroa told the Does that Attleboro was making a new offer when Attleboro stated that the offer of July 2009 was still on the table (she then turn to Attleboro's Attorney and asked her "Is that correct?") and pressured the Does to accept it.

183.    Hearing Officer Figueroa also violated the BSEA rules regarding Settlement conferences. As a hearing officer, she knows that such conferences must be voluntary and that both parties must be represented by counsel. Yet she told Mr. Doe on the day of the hearing "there was clarification (which Hearing Officer Figueroa was, herself, the catalyst for) that there is an offer ... you are simply called to respond yes or no as to the offer...". The pro se parents made it clear that they did not want to engage in Settlement discussions in the presence of the hearing officer. The hearing officer then used the parents' refusal to accept the settlement offer against the parents in her decision. If the hearing officer's position is that it was not a Settlement Conference but merely a discussion, then it was a pre-hearing conference since parents did not willing participate (it was not at will negotiations) and under the BSEA's own rules, discussion during a pre-hearing conference (which a hearing officer can unilaterally call) cannot be considered by the Hearing Officer when issuing a decision.

184.    Hearing Officer Figueroa made up her own law when she wrote in the December 16, 2011 decision that the parents claim for reimbursement for transportation was moot because there was no financial hardship when determining whether Attleboro's procedural violations resulted in a denial of FAPE. Nothing in IDEA requires parents to demonstrate financial hardship for a child to be entitle to FAPE.

185.    At the U.S. District Court, the BSEA sought remand of the case to "correct its mistakes" and the court agreed and gave the BSEA a second chance to do just that, instructing the Hearing Officer to apply the laws correctly. Instead, of Hearing Officer Figueroa continued her abuse of power and discretion. She showed complete disregard to the laws and to higher authority. The Does had previously asked Hearing Officer Figueroa to recuse herself twice because of her bias and prejudice and she refused. Ms. Figueroa could have done the honorable thing and recused

herself once the matter was remanded back to the BSEA. Instead, she wanted to teach the Pro Se parents a lesson for challenging her "authority" and succeeding.

186.        Throughout the hearing, held on 12/01/2011, Hearing Officer Figueroa acted as an attorney for Attleboro. She interrupted Mrs. Doe repeatedly in an attempt to make Mrs. Doe lose her train of thought. For example, whenever Mrs. Doe referenced the June 12, 2007 meeting, the Hearing Officer interrupted and stated that Mrs. Doe said June 2012 meeting. The Hearing Officer did this at least four different times. The hearing transcripts clearly show that Mrs. Doe said June12, 2007 meeting. In another instance, Ms. Heppe testified in cross examination that John Doe initially came to her school, Willett, with parent request. When Mrs. Doe questioned Ms. Heppe in a re-direct, about her statement, the hearing officer interrupted and said that Ms. Heppe never made such statement. In addition, Hearing Officer Figueroa wrote that the Does were seeking attorneys' fees even though they were not represented by attorneys on the day of the hearing. The Does made it clear to the Hearing Officer that they were not seeking costs and attorneys' fees from the BSEA and that they intend to seek them at the US District Court. Hearing Officer Figueroa had no right to make such a statement since the issue of costs and attorneys' fees was not before her. Hearing Officer Figueroa acted as Attleboro's attorney rather than an impartial Hearing Officer.

187.        Both Attleboro and Hearing Officer Figueroa claim Attleboro could sue the Does for attorneys' fees pursuant to $1415 (i)(3)(B)(III), which was cited by the Hearing Officer. Both Attleboro and the Hearing Officer know that $1415 (i)(3)(B)(III) does not apply in this case. The Does brought this action to seek reimbursement for the transportation they provided their child. Attleboro waited for over two years until the Does spent thousands of dollars in costs and attorneys' fees to come with an offer that did not include the money spent litigating their case. The Does were justified and will be justified to reject such an offer. Furthermore, the Does succeeded in obtaining reimbursement for transportation for the 2008-2009 school year which, by definition, means that the hearing request was not "without merit".

**PRAYER FOR RELIEF**

WHEREFORE the plaintiffs request that this court:

1. Take jurisdiction of this matter;

2. Enter an Order requiring that the Administrative Record, i.e., the Briefs, Due Process Exhibits, Transcripts, and the Due Process and Review Decisions, be filed with the Court.

3. Review the decision of the Bureau of Special Education Appeals resulting from the December 1, 2011 hearing for BSEA case No. 09-6759 which concluded that Attleboro was not responsible for providing transportation for John Doe to and from school during the 2007-2008 school year ;

4. Review the documentary evidence, grant leave to the plaintiffs to present additional evidence, witnesses and testimony to the court all relative to their claim for the 2007-2008 school year, and grant a de novo hearing for the portion of the plaintiffs request relative to the 2007-2008 school year;

5. Determine that certain portions of the Hearing Officer's decision relative to the 2007-2008 school year are incorrect as a matter of law, are not supported by the preponderance of the evidence, are not supported by the facts on record, and are arbitrary and capricious;

6. Determine that the Attleboro Public Schools violated Federal and State Special Education laws and that Attleboro submitted false information to the IEP team and that those actions resulted in a denial of FAPE to John Doe.

7. Order the Attleboro Public Schools to reimburse parents for providing transportation for the 2007-2008 school year

9. Determine that the plaintiffs are the prevailing party in the BSEA matter;

10. Order Attleboro to pay the plaintiffs their reasonable attorneys' fees, costs and expenses incurred relative to the administrative action before the BSEA;

11. Award the plaintiffs their costs and expenses incurred relative to filing this civil action in U.S. District Court including the filing fee, and photocopy and postage.

12. Award the plaintiffs their costs and expenses incurred relative to filing 1:09-cv-12127-DJC which the Does filed to request judicial review of the BSEA ruling granting Attleboro's Motion to Dismiss parents' claim for the 2007-2008 school year including the filing fee and photocopying and postage.

13. Award the plaintiffs their costs and expenses incurred relative to filing this civil action

including the filing fee and expenses related to issuing subpoenas.

14. Issue subpoenas for witnesses and documents as requested by the plaintiffs.

15. Issue an order declaring that the plaintiffs are the prevailing party.

16. An order forbidding the defendants to sue the plaintiffs for attorneys' fees and dismiss with

prejudice any claims that Attleboro makes to recover attorneys' fees from the parents.

17. Grant such other relief as the court deems just and equitable.


Respectfully submitted,
James Doe and Jane Doe.  Pro Se


_James Doe (AM)_   02/09/2009

James Doe                    Date


_Jane Doe (MM)_   2/9/2012

Jane Doe                     Date