## UNITED STATE DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOHN DOE, a minor child**<br>**by and through his parents and next friends**<br>**JAMES and JANE DOE,**<br><br>　　　　**Plaintiffs,**<br><br>　　　　**v.**<br><br>**ATTLEBORO PUBLIC SCHOOLS,**<br>**MASSACHUSETTS BUREAU OF SPECIAL**<br>**EDUCATION APPEALS,**<br><br>　　　　**Defendants.** | **Civil Action No. 1:12-cv-10266-DJC** |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                          March 14, 2013

### I.     Introduction

The Court discussed the factual background, statutory framework of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1401 et seq., and procedural history of this matter in its Memorandum and Order, dated August 31, 2011, ("2011 Order") resolving the parties' cross-motions for summary judgment and remanding the parties' prior action to the Massachusetts Bureau of Special Education Appeals ("BSEA"). Doe v. Attleboro Pub. Sch., No. 09-12127-DJC, 2011 WL 3854649 (D. Mass. Aug. 31, 2011). The Court will not repeat that history here, but in relevant part, the 2011 Order remanded the prior action to the BSEA to apply the correct legal standard to Defendant Attleboro Public Schools' ("APS") motion to dismiss James and Jane Doe's (the "Does" or "Plaintiffs") request for a hearing regarding reimbursement from APS for the cost of transporting their son to their school of choice during

the 2007-08 school year.[1]  The 2011 Order denied the Does' request for attorney's fees and costs without prejudice to be renewed at the end of the BSEA proceedings.  The Does now seek judicial review of the BSEA Hearing Officer's decision on remand denying their request for reimbursement of transportation costs for the 2007-2008 school year.  They also press their request for attorney's fees and costs.  APS has filed a counterclaim for attorney's fees from the Does.  Both parties have now filed cross-motions for summary judgment.  For the reasons discussed below, Plaintiffs' motion for summary judgment is DENIED, Plaintiffs' request for attorney's fees is DENIED, but Plaintiffs may submit a request for costs (excluding attorney's fees) regarding the litigation of the 2008-2009 transportation costs at the November 2009 Hearing.  Defendants' motion for summary judgment is GRANTED and APS' request for attorney's fees is DENIED.

## II.      Relevant Procedural History and Factual Background since the 2011 Order

### A.  December 1 Hearing

#### 1.  *Pre-Hearing Motions before the BSEA Hearing Officer*

Upon remand, on November 29, 2011, APS moved to dismiss on the grounds that Plaintiffs failed to state a claim for which relief could be granted by the BSEA Hearing Officer.  AR 89.[2]  As basis for dismissal, APS argued that since Plaintiffs had rejected its offer of settlement for the 2007-08 transportation costs because it did not include attorney's fees and the

---

[1] Plaintiffs also sought reimbursement of their costs for transportation during the 2008-2009 school year in their original hearing request before the BSEA.  The BSEA Hearing Officer addressed that matter at a hearing on November 13, 2009 ("November 2009 Hearing") and subsequently held that APS was responsible for providing their child's transportation for the 2008-2009 school year and ordered APS to reimburse the Does for the costs of same.  AR 796.  The 2008-2009 school year is only relevant here inasmuch as it relates to the Does' request for attorney's fees and costs.

[2] "AR" refers to the Administrative Record filed in this matter.  D. 23.

BSEA did not have the authority to grant attorney's fees, the Hearing Officer could not grant the additional remedy the Does seek.[3]  See AR 91-92; AR 218-19.

The BSEA Hearing Officer scheduled a hearing for December 1, 2011 ("December 1 Hearing") and identified four issues for the hearing:  (1) whether APS violated the Does' due process rights during the IEP team meeting on June 12, 2007; (2) whether APS coerced the Does into signing an intra-district placement form in June 2007; (3) whether Attleboro must reimburse the Does for transportation costs for the 2007-08 school year; and (4) whether APS's motion to dismiss with prejudice should be granted.  AR. 113-14.  See AR 27–29.  In connection with the December 1 Hearing, the Does moved to strike evidence of APS' settlement offer and their subsequent rejection as irrelevant.  AR 71.  The Hearing Officer denied Plaintiffs' motion on the basis that the offer and rejection were relevant to APS's ability to pursue attorney's fees from the Does in this Court pursuant to the IDEA.  See AR 117-18, 184-85.

### 2.  Evidence Presented at the December 1 Hearing

At the December 1 Hearing, the Does represented themselves and APS was represented by counsel.  Prior to the commencement of the hearing that day, APS reiterated its offer to reimburse the Does the total amount of transportation for the 2007-08 school year.  AR 87.  APS also advised the Does that this was the maximum amount that they could obtain from the BSEA hearing and if they proceeded with the hearing, the school district intended to seek its attorneys' fees dating back to its first settlement offer in June 2010.  AR 113, 316.  Although APS agreed to

---

[3] On June 29, 2010, APS offered to reimburse Plaintiffs for the 2007-08 transportation costs.  AR 68, 315.  On July 7, 2010, Plaintiffs rejected the settlement offer stating that it fell short of Plaintiffs' demands for attorney's fees and costs as the prevailing party in the November 2009 Hearing.  AR 69.  On July 12, 2010, APS responded that they viewed the rejection as unreasonable and unnecessarily prolonging the litigation and that if it prevailed on the 2007-08 claim, APS will seek fees and costs from Plaintiffs.  AR 76.  Plaintiffs responded on July 21, 2010 that APS had prolonged the litigation and that Plaintiffs viewed the July 12 letter as a threat to force Plaintiffs to accept the offer.  AR 77–78.

postpone the hearing to allow the Does further consideration of this matter and the Hearing Officer offered to suspend the hearing for the same purpose, the Does declined the offer and chose to proceed with the hearing.  AR 113, 227-31.

During the December 1 Hearing, the Hearing Officer heard opening statements, took evidence, heard testimony from several witnesses and allowed closing arguments.  Both Mr. and Mrs. Doe testified and they offered testimony from Gaylene Heppe, the principal of the Willett School during the school years between 2005 and 2008, AR 368-69, and Maureen Morgan, a student services coordinator for early childhood for APS, AR 388-89.  In relevant part, Mrs. Doe testified that their son was diagnosed with Pervasive Developmental Disorder Not Otherwise Specified ("PPD-NOS") in 2005 and entered the Early Learning Center in the APS with an Individualized Education Plan ("IEP") in the fall of 2005.  AR 236, 245.  Their son attended kindergarten at the Willett Elementary School for the 2006-2007 school year.  AR 254.  An IEP meeting was held at the end of that school year, on June 12, 2007, to discuss where their son would attend the same school the following year.  AR 256-57.  Both Mr. and Mrs. Doe were present at the meeting along with Heppe, Dickens-Weil and other members of the IEP team including the kindergarten special education teacher, occupational therapist, regular education teach and school psychologist.  AR. 122.  Maureen Morgan was not present and the Does signed a form excusing Morgan's absence from the meeting.  Although she was not present, a memorandum from Morgan was presented during the meeting that described an earlier June 8, 2006 IEP meeting in which the IEP team decided to place their son at the Studley Elementary School because the team thought that he might be a candidate for the Insights program located

there.  AR 264-65, 268, 318.[4]  Mrs. Doe disputed this characterization of the team's earlier decision and claimed that their son was assigned there because his home school, Hill Roberts Elementary School, did not have enclosed classrooms.  AR 276-77.  Mrs. Doe did not dispute that she signed the intra-district form and did so not on the day of the June 12, 2007 meeting, but after that meeting and after a visit to the Hill Roberts Elementary School.  AR 277, 298.  Mrs. Doe agreed that she was permitted to participate fully in the June 12, 2007 meeting and that meeting led to no change in IEP services for their son.  AR 304, 313.  Mrs. Doe claimed that she had not been given a notice of the procedural safeguards at the June 12, 2007 meeting, AR 313-14, but had received back in 2005 and had read them then.  AR 313-14, 356.   Mr. Doe noted that if they had not signed the intra-district transfer form, their son would not have been able to return to the Willett School.  AR 330.  He did not recall receiving any notice of procedural safeguards before 2008.  AR. 352.

Neither Heppe nor Morgan offered much testimony that supported the Does' contentions.  Heppe, the principal of the Willett Elementary School in the 2006-2007 and 2007-2008 school years, AR 368-69, also attended the June 12, 2007 meeting.  AR 369.  As school principal, she was responsible for signing off on all intra-district transfer requests.  AR 381.  Although she agreed that if the Does had not signed the form, their son would not be assigned to the Willett Elementary School for the coming year, she denied threatening the Does to sign the form.  AR 382.  Morgan was not present for the 2007 meeting, but had been present for the June 8, 2006 meeting when the IEP team recommended that the Does' son attend the Studley Elementary School for the Insights Program.  AR 390.  (This was later changed to the Willett

---

[4] The N1 form (Team Determination of Educational Placement), prepared contemporaneously with the 2006 meeting, dated June 8, 2006, indicated that the child required a closed classroom and placement at the Studley Elementary School.  AR 827.

5

Elementary School when the location of the program changed, AR 406).  She testified that his home school, Hill Roberts Elementary School, had some enclosed classrooms, but the team thought that if he needed more support, he should have access to the Insights program.  AR 401.  She also confirmed that the notice of procedural safeguards was sent to the Does in August 2005.  AR 407.

APS put on one witness, Michelle Dickens-Weil, a student services coordinator for the elementary schools in APS.  AR 440-41.  She was also present for the June 12, 2007 meeting.  AR 443.  She explained the purpose of the meeting was not to consider a change in the IEP services, but just the child's school assignment.  AR 443-45.  Dickens-Weil noted that at the meeting, the IEP team reviewed an opinion letter from Dr. Kerim Munir, offered by the Does, that recommended that their son be in an enclosed classroom.  AR 448; see AR 309.  She recalled Heppe explaining the intra-district request form to the Does and that no threats were made to the parents to sign it.  AR 450.  Dickens-Weil testified that no notice of the procedural safeguards was presented to the parents in connection with the June 12, 2007 meeting.  AR 451, 462-463.  She did, however, author the meeting notes for the June 12, 2007 meeting, AR 708, that were later distributed to the Does.  AR 455.  These notes reflect the IEP team's conclusion that the Does' child could be successful at the Hill Roberts Elementary School, but that if the Does wanted to keep him at the Willett Elementary School, they would have to complete an intra-district transfer form.  AR 708.

### B.  Hearing Officer's Decision

#### 1.  Denying APS's Motion to Dismiss

In her decision and order issued December 16, 2011 (the "December 16 Decision"), the Hearing Officer denied APS' motion to dismiss because any relief granted by the BSEA would

include findings of fact and a determination of the merits of Plaintiffs' claim, which could be used to ascertain the extent to which the Does were the prevailing party in any subsequent federal court proceeding for attorney's fees and costs. AR 117.

### 2. Denying Reimbursement of 2007-2008 Transportation Costs to the Does

The Hearing Officer also denied Plaintiffs' request for reimbursement of transportation costs for the 2007-08 school year. The Hearing Officer concluded that the Does had not satisfied their burden of persuasion regarding their allegation that APS had coerced them into signing the intra-district placement form. AR 137. The Hearing Officer also found that, while the evidence supported a finding of certain procedural violations by APS, such violations did not result in a denial of a free, appropriate public education ("FAPE") to John Doe or any harm to the Does. AR 133–34. In support of that conclusion, the Hearing Officer stated that (1) the child's IEP for first grade (the 2007-08 school year) was reasonably calculated to offer him a FAPE at his neighborhood school, Hill Roberts Elementary School, (2) the child attended the parents' preferred school for first grade, the Willett Elementary School, and (3) since APS offered to reimburse the Does for the 2007-08 transportation multiple times, any financial harm suffered by the Does was moot. See AR 133–35.

### 3. Although Finding Procedural Violations by APS, the Hearing Officer Finds No Harm to the Does

As to procedural violations, the Hearing Officer agreed with the Does that since the June 12, 2007 meeting was to determine their son's "placement," the APS should have issued a new N1 form and a notice of procedural safeguards that informed the parents of their rights. AR 130. Based upon the testimony of the Does and Dickens-Weil, APS did neither for the June 12, 2007 meeting. The Hearing Officer, however, concluded that these violations did not interfere with the parents' participation in the IEP process and did not harm their son. The Hearing Officer was

7

persuaded that although the Does had not received the notice of the procedural safeguards in connection with the June 12, 2007 meeting, they had received such notice previously and they were therefore on notice of their appeal rights before the 2007 meeting.  AR 131.  Moreover, she concluded that the failure to provide an N1 form did not interfere with the Does' ability to participate in the June 2007 meeting.  The Hearing Officer also rejected the Does' argument about any alleged impropriety in APS sharing the Morgan memorandum after the Does had excused Morgan from attending the meeting and that the information contained in the Morgan memorandum about the reasons for the placement at the Studley School (later changed to the Willett School) for kindergarten was false.  She found that Morgan's testimony was credible and persuasive and that there was "insufficient evidence" to conclude that this memorandum was a determining factor in IEP team's decision at the 2007 meeting.  AR 133.  Although the memorandum undercut the Does' position, "it was not inconsistent with the considerations used in determining the location for provision of services in 2006."  AR 132.

The Hearing Officer concluded that the student suffered no harm as a result of APS's "technical violations."  AR 134.  Since there was no dispute that the child had received an "appropriate" education for 2007-2008 (having remained at the Willett Elementary School), the Hearing Officer focused on whether he had received a "free" education given the transportation costs that the Does had to incur.  Recounting that APS's repeated offers since 2010 to reimburse the Does for transportations costs, including on the eve of the December 1 Hearing, the Hearing Officer concluded that "any harm regarding financial hardship due to parental provision of transportation is moot."  AR 134.  "As such, [APS's] procedural transgressions constitute harmless error."  AR 134.

Finally, the Hearing Officer concluded that the parents had failed to show that their son would not have received a FAPE at the Hill Roberts Elementary School, his home school.  AR 134-35.  She reasoned that it was appropriate for the IEP team to discount the weight it gave to the letter of Dr. Munir recommending that the child be in an enclosed classroom when the nature of his evaluation was not known and his letter did not indicate any knowledge about the APS proposed classrooms or observation of the child in the classroom.  AR. 134-35.

### 4. *Finding No Coercion of the Does*

As to the Does' claim of coercion, the Hearing Officer concluded that "there is insufficient evidence to support a finding that Parents were coerced into signing the Intra-District Placement Form."  AR 137.  In reaching this conclusion, the Hearing Officer noted that the Parents knew the purpose of the June 12, 2007 meeting—i.e., discussion of a recommended placement at the Hill Roberts Elementary School for the coming school year—ahead of time; the parents received, but were not forced to sign, the intra-district form during the meeting; they did not sign it until a few days later, June 17, 2007, some two months before the school year began and after Mrs. Doe had an opportunity to visit the Hill Roberts Elementary School; the Does were free to consult with anyone about signing the form and no deadline was set for the return of it (although APS indicated that spaces at the school were limited); and the Does were aware that by signing the form, their son would remain at the Willett Elementary School, but they would be responsible for his transportation.  AR 125, 136-37, 575.

## III.    Standard of Review

For judicial review of an administrative decision under the IDEA, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  Accordingly,

"[a] district court reviews the administrative record, which may be supplemented by additional evidence from the parties, and makes an independent ruling based on the preponderance of the evidence.  However, that independence is tempered by the requirement that the court give due weight to the hearing officer's findings.  As a result, a district court's review falls somewhere between the highly deferential clear-error standard and the non-deferential de novo standard.  We have characterized this intermediate level of review as one of involved oversight."  D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 35-36 (1st Cir. 2012); see Lenn v. Portland Sch. Comm., 998 F. 2d 1083, 1086 (1st Cir. 1993) (citing Burlington v. Dep't of Educ., 736 F.2d 773, 792 (1st Cir. 1984)); Roland M. v. Concord Sch. Comm., 910 F.2d 983, 989 (1st Cir. 1990).

"The application of these standards in the context of a motion for summary judgment adds a layer of complexity."  Sebastian M. v. King Philip Regional Sch. Dist., 685 F.3d 79, 84 (1st Cir. 2012) (citing Ross v. Framingham Sch. Comm., 44 F. Supp. 2d 104, 113 (D. Mass. 1999)).  In consideration of a summary judgment motion, the court must deny a motion for summary judgment if the parties have shown that there is a genuine dispute as to any material fact that might affect the outcome under the applicable law.  See Fed.R.Civ.P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A "motion for summary judgment in an IDEA case is simply a vehicle for deciding the relevant issues, and the non-moving party is not entitled to the usual inferences in its favor."  Sebastian M., 685 F.3d at 84-85.  Although judicial review in IDEA cases is less deferential review than judicial review of other agency actions, the Court "must nevertheless give due deference to the findings of the administrative hearing officer."  Id. at 85; see Ross, 44 F. Supp. 2d at 113.  The hearing officer's credibility determinations are entitled to particular deference.  Sudbury Pub. Sch. v. Mass. Dep't of Elem. & Secondary Educ., 762 F. Supp. 2d 254, 262 (D. Mass. 2010) (relying on the Hearing Officer's credibility

assessment as supported by the record where "[c]redibility determinations are the province of the factfinder, in this case the Hearing Officer"); N. Reading Sch. Comm. v. BSEA, 480 F. Supp. 2d 479, 490 (D. Mass. 2007) (upholding Hearing Officer's conclusion because "[g]iven that this is a fact-intensive inquiry that relies on credibility determinations (which the hearing officer, with both expertise and contemporaneous perspective, is in a better position that [the judge] to make), there is no reason to disturb the hearing officer's conclusion"); see also Sebastian M., 685 F.3d at 86 (noting that the "valuation of expert testimony is precisely the sort of first-instance administrative determination that is entitled to judicial deference by the district court").

## IV.   Discussion

The Does urge this Court to overturn the December 16 Decision and order APS to reimburse them for the transportation costs for the 2007-08 school year.  Plaintiffs argue they are entitled to such reimbursement because (1) John Doe was denied his right to a FAPE because APS committed numerous procedural violations with respect to the IDEA, and (2) Plaintiffs were coerced into signing the intra-district request form which stated they were responsible for the costs of transportation for the 2007-08 school year and were thereby denied the free portion of a FAPE.

### A.   **BSEA Hearing Officer's December 16 Decision**

#### 1.   *Procedural Violations by APS*

The IDEA provides that where a party to a state or local educational agency action alleged procedural violations, the Hearing Officer may find that the student did not receive a FAPE "only if" the procedural violations:

> (I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(ii).   There must be some rational basis to believe that the procedural

violations had those effects, and that they were not "mere technical violations."   See, e.g., Hazen

v. S. Kingstown Sch. Dep't, No. CA 09-313 ML, 2010 WL 5558912, at *23 (D.R.I. Nov. 22,

2010) adopted by sub nom. Hazen ex rel. R.H. v. S. Kingstown Sch. Dep't, No. CA 09-313 ML,

2011 WL 63499 (D.R.I. Jan. 7, 2011) (upholding the Hearing Officer's determination that the

parents were not entitled to relief for a procedural violation because the student was not harmed

and the parents were not significantly prevented from participating in the IEP process); T.B. v.

Warwick Sch. Dep't, No. CIV.A. 01-122T, 2003 WL 22069432, at *2 (D.R.I. June 6, 2003),

aff'd sub nom. Lt. T.B. v. Warwick Sch. Comm., 361 F.3d 80, 82 (1st Cir. 2004) (noting that the

district court found that "any procedural violations were not sufficiently material to

justify rejection of the IEP or tuition reimbursement and that the proposed IEP did not

substantively deny [Plaintiff] FAPE").

　　　　As an initial matter, the Hearing Officer did find that APS committed several procedural

violations in regard to the June 12, 2007 meeting, namely the failure to provide a N1 form and

provide a notice of procedural safeguards to the Does.   As to the first issue, the Hearing Officer

rejected the distinction that APS attempted to make between a child's "location" (not triggering a

new N1) as opposed to his "educational placement" (that would trigger a new N1).   AR 130.

Concluding that where the Does contended that the change in location from the Willett School to

the Hill Roberts School would affect the provision of services (i.e., an enclosed classroom as

opposed to an open classroom) and the previous N1, in 2006, had indicated that the placement

determination was in part for the child's need for an enclosed classroom, APS should have issued

both a new N1 and notice of procedural safeguards.   Although APS contests the Hearing

Officer's conclusion that the June 12, 2007 IEP's team decision that the child's school location

was a "educational placement" necessitating the issuance of a new N1, D. 34 at 8-10, the Court

need not resolve this issue because it agrees and affirms the Hearing Officer's conclusion that

neither violation significantly impeded the Does' participation in the IEP process nor the child's

right to a FAPE or educational benefits.[5]

a.    APS's Procedural Violations Did Not Significantly Impede
      Plaintiffs' Opportunity to Participate in the Decision-Making
      Process Regarding the Provision of John Doe's FAPE

The IDEA provides that parents of a child with a disability shall have the opportunity "to

participate in meetings with respect to the identification, evaluation, and educational placement

of the child, and the provision of a free appropriate public education."  20 U.S.C. § 1415(b)(1).

Participation in the decision-making process must be meaningful, not "mere form."  Deal v.

Hamilton Cnty. Sch. Bd. of Educ., 392 F.3d 840, 858 (6th Cir. 2004).  School officials must have

an open mind and be willing to listen and consider the parents' input.  Id. at 857–58.  Meaningful

participation cannot be assumed just because the parents were present and allowed to speak.  Id.

at 858.

Although the Hearing Officer agreed that the June 12, 2007 team decision was a

placement determination and APS did not follow certain procedures in connection with that

meeting, AR 129–131, she determined that APS's procedural violations did not prevent Plaintiffs

---

[5] Plaintiffs also argue about numerous alleged procedural improprieties by the Hearing Officer
and contend that the Hearing Officer predetermined the outcome of the hearing, abused her
discretion and power, acted with bias and prejudice against Plaintiffs, and denied Plaintiffs their
due process rights.  Pl. Mem., D. 30 at 14-17.  First, there is no evidence that the Hearing Officer
predetermined the outcome or was in any way biased against Plaintiffs.  In fact, the same
Hearing Officer presided over the November 2009 hearing and ruled in favor of the Does as to
the transportation reimbursement for the 2008-09 school year.  Second, the alleged procedural
improprieties that Plaintiffs complain about, such as interrupting Plaintiffs during trial and her
decisions regarding witnesses and evidence are immaterial and harmless, and as such do not
require reversal.  See, e.g., Amann v. Stow Sch. Sys., 982 F.2d 644, 652-53 (1st Cir. 1992)
(upholding court's decision where the hearing officer's alleged procedural violations caused no
substantive injury or remedial harm to plaintiffs).

from meaningfully participating in the decision-making process. AR 132. The Court concludes that the Hearing Officer's findings of fact on this issue are well-founded and consistent with the administrative record. There was no testimony or other evidence in the record, even from the Does, that they were prevented from speaking or staying for the duration of the meeting or otherwise meaningfully participating in the June 2007 meeting. They were permitted to present a letter from a private psychologist, Dr. Munir, about the alleged need for their child to be in an enclosed classroom. AR 132. There is nothing to suggest that the IEP team did not consider this input, only that it ultimately disagreed with the Does' position given its own educational expertise and experience with their son and his performance in kindergarten. The team was only required to consider the parents' position, not to adopt it. Moreover, the IEP team had reason to discount Dr. Munir's one-page letter given the limits of his opinion, the lack of information about his evaluation of the child or knowledge on his part of the various classroom settings that APS was considering for him. AR 710.

As to the Morgan memorandum, the Court cannot say that the Hearing Officer's findings, clearly articulated in the December 16 Decision, that she found Morgan to be a credible and persuasive witness are erroneous where she observed Morgan's testimony first-hand and concluded that the information in the Morgan memorandum about allowing the child access to the Insights Program was not false and such testimony was not otherwise inconsistent with the record of the IEP team's 2006 recommendation regarding placement. AR 827 (N1, dated June 8, 2006, referring not only to an enclosed classroom, but placement at the Studley Elementary School). Moreover, even if the Hearing Officer had credited Mrs. Doe's testimony that the child's placement in 2006 turned upon the availability of enclosed classrooms, it still remains the case that there was nothing in the record to suggest that this memorandum was a determining

factor in the 2007 team meeting or the team's choice of a course of action with which the Does disagreed.  This is particularly true where a number of the school participants in the June 2007 meeting had extensive experience working with and/or observing the child during the school year.  For all of the reasons, the Court concludes that to the extent that there were procedural violations, they did not impede the Does from participating meaningfully in the IEP process and the June 12, 2007 meeting in particular.

> b. APS's Procedural Violations Did Not Impede John Doe's Right to FAPE or Cause John Doe to be Deprived of Educational Benefits

The Hearing Officer also determined that John Doe did not suffer any harm as a result of the procedural violations because John Doe remained at Plaintiffs' school of choice, and the IEP team determination was reasonably calculated to provide "an appropriate education which allowed the Student to make effective progress."  AR 135.  The Hearing Officer found the APS witnesses' testimony regarding their experience with John Doe and their reasons for recommending that John Doe return to his neighborhood school more persuasive than Plaintiffs' testimony and Dr. Munir's letter.  Thus, the Hearing Officer concluded that Plaintiffs presented insufficient evidence to conclude that John Doe could not have received a FAPE at the school the Team recommended.  AR 135.

The IDEA requires that states provide children with a "free appropriate public education" in the "least restrictive environment" with the "goal of providing full educational opportunity to all children with disabilities."  20 U.S.C. §§ 1412(a)(1)(A), (a)(5) & (a)(2).  A FAPE is provided when the school district implements an IEP that is "'reasonably calculated' to insure that the child receives meaningful 'educational benefits' consistent with the child's learning potential."  Hunt v. BSEA & City of Newton, No. 08-10790-RGS, 2009 U.S. Dist. LEXIS 79775, at *4 n.8 (D. Mass. Sept. 4, 2009) (quoting Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v.

Rowley, 458 U.S. 176, 207 (1982)).  However, the school district is not required to provide the student with the "maximum educational benefit possible."  Lessard v. Wilton-Lyndeborough Coop. Sch. Dist., 518 F.3d 18, 23 (1st Cir. 2008).  Rather, the IEP need only provide "'some educational benefit,' not an optimal or an ideal level of educational benefit."  Id. (quoting Ma. Sch. Admin. Dist. No. 35 v. Mr. R., 321 F.3d 9, 11 (1st Cir. 2003)); see, e.g., Sudbury Pub. Sch. v. Mass. Dep't of Elem. & Secondary Educ., 762 F. Supp. 2d 254, 261 (D. Mass. 2010).

After reviewing the administrative record and the Hearing Officer's December 16 Decision, the Court concludes that the Hearing Officer did not err in concluding that none of the procedural violations interfered with the FAPE for the Does' son and did not deprive him of educational benefits.  The record demonstrates that the child would have had a FAPE at the Hill Roberts Elementary School despite the Does' arguments to the contrary.  AR 708 (6/12/2007 meeting notes concluding that the "outcome of this meeting is that the team does not believe that [the child] cannot be successful at Hill-Roberts").  First, Mrs. Doe testified at the December 1 Hearing that Dr. Munir never observed John Doe in a classroom setting or visited any of the classrooms in the APS.  AR 309−10.  Given Dr. Munir's limited observation of John Doe and his lack of familiarity with the schools or classrooms proposed for John Doe, this letter alone has "limited value," and, while the IEP team was required to consider it, they were not required to adopt Dr. Munir's recommendations over their own, particularly when theirs was based upon longitudinal information about the child's performance in the classroom.  AR 134; see Hazen, 2010 WL 5558912, at *10 (finding that "Plaintiffs' views were well represented at the IEP meetings" and "[t]he fact that the Hearing Officer ultimately did not accept them does not render their participation 'not meaningful'").  Second, Mrs. Doe testified that her opinion that John Doe could not receive a FAPE at his neighborhood school was based on her own observations of the

16

school setting and the fact that, as his mother, she knows John Doe "better than anybody else on the planet."   AR 310–13.   While the Court does not dispute this knowledge, there was insufficient showing that John Doe could not have received a FAPE at his neighborhood school, even if it was not the optimal school.  See Rowley, 458 U.S. at 206 (explaining that reviewing district courts should not "substitute their own notions of sound educational policy for those of the school authorities which they review");  Warwick Sch. Comm., 361 F.3d at 83 (acknowledging that "courts are ill-equipped to second-guess reasonable choices that school districts have made among appropriate instructional methods").   The Hearing Officer properly considered the education professionals' expertise and the reports regarding John Doe's progress in kindergarten in determining that John Doe was not denied a FAPE by the team's recommended placement at John Doe's neighborhood school, Hill Roberts Elementary School. AR 133−35.   Moreover, their son remained at the Willett Elementary School, their school of choice, and cannot be said to have been denied any of the educational benefits that the Does claimed he would have lost if the APS's recommended placement had been effectuated.

Regarding Plaintiffs' claim that their son was denied the "free" portion of John Doe's right to a FAPE because they incurred transportation costs for the 2007-2008 school year does not merit a different outcome.   It is undisputed that the Does  received offers from APS to reimburse their 2007-2008 transportation costs in June 2010 and December 2011.   Moreover, they would not have incurred any cost if their son had been placed at the Hill Roberts Elementary School and, as previously noted, had the benefit of a FAPE at no cost.   The fact that they choose not to do so and keep him at the Willett Elementary School and voluntarily incur the transportation costs (that APS has now repeatedly offered to reimburse) does not mean that their son was denied a free education, a FAPE.

2.    *Coercion by APS*

The Does were not coerced into signing the intra-district transfer form.  They fully participated in the June 12, 2007 meeting, advocated their position about their son's placement and were presented the form to maintain his enrollment in their school of choice if they chose to bear the transportation costs.  They were not asked or forced to sign the form at the meeting.  In fact, the record indicates that no deadline was set for doing so.  The Does only returned the form after Mrs. Doe had an opportunity to visit Hill Roberts Elementary School.  They were given the opportunity to review and consider the form at their own pace, consult others (including their previously retained attorney) regarding same and sign or not sign it.  Although their son would not have been able to attend the Willett Elementary School if they did not sign the form, none of the circumstances here suggest that the Does' free will was overborne or that they were coerced into doing so.

### B.    Attorney's Fees and Costs

The fee-shifting provision in the IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs" to the parent of a child with a disability who is the prevailing party in any action or proceeding brought under the IDEA, and to a prevailing state or local educational agency against the parent "if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." 20 U.S.C. § 1415(i)(3)(B).

An award of attorney's fees in an action under the IDEA is at the discretion of the court. Schroeder v. Triton Reg'l Sch. Dist., No. 07-10367-PBS, 2007 U.S. Dist. LEXIS 100119, at *34 (D. Mass. Dec. 18, 2007).  A qualifying prevailing party under the IDEA is eligible to receive attorney's fees, but is not "automatically entitle[d]" to the full amount spent throughout the course of the action or proceedings.  Gary G. v. El Paso Indep. Sch. Dist., 632 F.3d 201, 208 (5th

18

Cir. 2011) (quoting <u>Jason D.W. v. Houston Indep. Sch. Dist.</u>, 158 F.3d 205, 209 (5th Cir. 1998)). Under IDEA, if the prevailing parent "during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy[,]" then the court shall reduce the amount of the attorney's fees award accordingly, unless the educational agency has "unreasonably protracted the final resolution of the action or proceeding." 20 U.S.C. §§ 1415(i)(3)(F),(G).

A party has prevailed if there has been "a material alteration of the legal relationship of the parties" and a "judicial <u>imprimatur</u> on the change." <u>Smith v. Fitchburg Pub. Schs.</u>, 401 F.3d 16, 22 (1st Cir. 2005) (quoting <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598, 604–605 (2001) (emphasis in original)).  The party must have obtained relief on the merits, or in a consent decree, not merely through a favorable private settlement or voluntary change in behavior by the defendant.  <u>Id.</u> (noting that "[t]he Court [in <u>Buckhannon</u>] expressly rejected the catalyst theory, which posits that a plaintiff is a prevailing party if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct") (quoting <u>Buckhannon</u>, 532 U.S. at 601) (internal quotation marks omitted)).  A favorable ruling from an administrative hearing officer serves as the necessary judicial imprimatur to confer prevailing party status.  <u>Schroeder</u>, 2007 U.S. Dist. LEXIS 100119, at *25–26.  The party does not have to obtain a "favorable final judgment on all (or even the most crucial) of her claims." <u>Doe v. Bos. Pub. Sch.</u>, 550 F. Supp. 2d 170, 173 (D. Mass. 2008) (quoting <u>Me. Sch. Admin. Dist. No. 35 v. Mr. R.</u>, 321 F.3d 9, 15 (1st Cir. 2003)) (internal quotation marks omitted)), but it cannot be a "purely technical or de minimis victory." <u>Mr. R.</u>, 321 F.3d at 15.  "[T]he <u>degree</u> of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for

a fee award at all." Bos. Pub. Sch., 550 F. Supp. 2d at 173 (emphasis in original) (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 790 (1989)).

In the instant case, both parties have requested an award of attorney's fees based on their respective status as a prevailing party. For the following reasons, the Court denies both Plaintiffs' and APS's requests for attorney's fees.

> ### 1.   Plaintiffs' Request for Attorney's Fees from APS

It is undisputed that Plaintiffs were the prevailing party in the November 2009 Hearing. Def. Mem., D. 34 at 13. However, APS maintains that Plaintiffs are not entitled to attorney's fees, despite being the prevailing party, because Plaintiffs were not represented by attorneys when the hearing took place on November 13, 2009. Id. at 13–14. APS further argues that "[Plaintiffs' former] attorneys had no involvement in the preparation or litigation of the case from which the Plaintiffs are now seeking fees." Id. APS is correct that while Plaintiffs were represented before the BSEA from May 2009 to August 2009, Plaintiffs have proceeded pro se since August 21, 2009. Pl. SOF, D. 31 ¶ 40–41; AR 661. Pro se plaintiffs are not entitled to attorney's fees. See Kay v. Ehrler, 499 U.S. 432, 438 (1991) (ruling that a pro se litigant, even one who is an attorney, is not entitled to attorney's fees under 42 U.S.C. § 1988). Plaintiffs counter that they and their attorneys were ready to proceed to the hearing scheduled for August 24, 2009 when, on the eve of that hearing, APS moved to postpone, and that the Hearing Officer used Plaintiffs' former attorneys' work product in her decision granting them reimbursement for 2008-09. Pl. Reply, D. 37 at 15. Plaintiffs assert that there is "no law . . . that states that the attorneys must be present at the hearing as a condition for fee shifting." Id.

While it is true that "[s]erving as counsel of record at trial is not a prerequisite to the recovery of fees," the real issue in a request for attorney fees such as this is "whether services

were performed which contributed to claimant's success in the lawsuit." Mammano v. Pittston Co., 792 F.2d 1242, 1245 (4th Cir. 1986) (awarding fees in an action under Title VII[6] to plaintiffs' former counsel where former counsel had full responsibility for the Title VII claims and proceedings before the Equal Employment Opportunity Commission prior to handing the case over to local counsel to pursue related tort claims and provided preliminary assistance to new counsel). The focus is on the contribution of the attorney to the claimant's ultimate victory. For example, consider the case in which a plaintiff in a successful claim under the Americans with Disabilities Act who was represented at the first, unsuccessful, trial but proceeded pro se in the successful appeal and second trial petitioned the court for attorney's fees for work performed by her former counsel. See Rhoads v. FDIC, 286 F. Supp. 2d 532 (D. Md. 2003), aff'd, Rhoads v. FDIC, 94 F. App'x 187 (4th Cir. 2004). The court in Rhoads considered whether the pro se plaintiff's former counsel provided any services that "contributed to the ultimate success of the litigation." Id. at 542. The court noted that, "because former counsel withdrew their representation before Rhoads prevailed at the Fourth Circuit and second trial," to receive any award, it would have to be established that the attorneys' efforts, and not those of the plaintiff, "produced the final judgment in favor of [plaintiff]." Id. at 542 n.7; see also Corrigan v. United States, 27 F.3d 436, 437–38 (9th Cir. 1994) (denying pro se plaintiff attorney's fees as part of litigation costs in a lawsuit against the IRS because the services provided by plaintiff's former attorney were performed prior to litigation and plaintiff prepared and filed the complaint on his own after dismissing his attorney when the parties were unable to settle). Therefore, while Plaintiffs are the prevailing party in the November 2009 Hearing, they would only be entitled to

---

[6] Citing the legislative history of the IDEA, the First Circuit has directed that "IDEA's fee provisions are to be interpreted consistently with Supreme Court law and with other fee-shifting statutes." In Doe v. Boston Public Schools, 358 F.3d 20, 27 (1st Cir. 2004).

attorney's fees if, and to the extent that, the efforts of their former attorneys, and not Plaintiffs, actually contributed to the success of that particular litigation.

The Does were only represented in this matter (that has extended over four years) for a brief time, between May 13, 2009 and August 21, 2009.  Plaintiffs' Itemized Statement of Costs and Attorneys' Fees at 1, Attleboro Pub. Sch., 09-cv-12127-DJC, D. 42 ("Plaintiffs' Statement of Costs"); AR 607 (attorneys' May 26, 2009 notice of appearance): AR 659 (attorneys' August 21, 2009 notice of withdrawal).  To support their request for attorney's fees, Plaintiffs first point to the fact that in the decision regarding the 2008-09 transportation costs, the Hearing Officer noted that the documents admitted into the record as the Plaintiffs' exhibits were submitted five days prior to the original August 2009 hearing date, when Plaintiffs were still represented by counsel.  Pl. Reply, D. 37 at 15; AR 787.  Second, Plaintiffs note that their former attorneys prepared subpoena requests, responded to discovery requests and communicated with APS's attorneys and the Hearing Officer regarding scheduling issues and settlement negotiations.  Pl. Reply, D. 37 at 15.  Plaintiffs' attorneys may have collected and provided the Hearing Officer and Defendant with the list of exhibits, and participated in pre-trial conferences, however, the majority of the efforts that actually contributed to Plaintiffs' success at the November 2009 Hearing were the Plaintiffs' efforts.

First, Plaintiffs' original BSEA hearing request setting out Plaintiffs' arguments in extensive detail was submitted to the BSEA by the Does on May 3, 2009, before they were represented by counsel.  AR 535-44; Pl. SOF, D. 31 at ¶ 40; Plaintiffs' Statement of Costs (indicating that Plaintiffs' representation by former counsel began on May 13, 2009 and continued until August 21, 2009 for total attorney's fees of $12,650.00).  Second, APS' motion to dismiss the remaining issues and Plaintiffs' subsequent reply were filed in late September

2009, almost a month after Plaintiffs' former counsel withdrew. AR 672, 681. The Hearing Officer ruled on these pleadings, dismissing the 2007-08 transportation costs claim and granting the hearing for the 2008-09 school year, while Plaintiffs were representing themselves. AR 717. Third, Plaintiffs argued and gave oral testimony without assistance of counsel at the November 2009 Hearing that conferred prevailing party status on them. See AR 1119 (November 13, 2009 Hearing Transcript). In addition, it is worth noting that the witnesses identified on the list previously submitted by counsel were all identified in the Does' original May 3, 2009 request for hearing and the exhibits Plaintiffs rely on as evidence that the Hearing Officer used their former attorneys' work product in her decision consist solely of documents collected from the school or the Does and not any attorney work product. See AR 646, 799–800. Finally, the majority of the charges on Plaintiffs' Statement of Costs, such as telephone conversations with APS regarding settlement negotiations, scheduling and the Does' issues with the school unrelated to transportation, do not appear to be related to the actual outcome at the November 2009 Hearing.[7] See Plaintiffs' Statement of Costs at 2–4. For all of these reasons, the Court denies the Does' request for attorney's fees.

Even if the Court had, in its discretion, awarded any attorney's fees to the Does (which it does not), the Court notes that it would have been unlikely to have awarded the full amount sought by the Does under any lodestar analysis of the reasonableness of those fees were the Does were only represented for approximately twelve weeks, during which no substantive hearings

---

[7] The Court has also considered whether the Does' request for attorney's fees is barred by § 1415(i)(3)(D)(i) which provides that attorney's fees and related costs may not be reimbursed for services performed subsequent to an offer of settlement to a prevailing parent if (1) the offer is made at any time more than ten days before the proceeding begins; (2) the offer is not accepted within ten days; and (3) the relief finally obtained is not more favorable to the parents than the settlement offer. However, the attorney's fees that Does seek were for services performed in May to August 2009, before the first of APS's settlements offers in June 2010.

were held and the record evidences little attorney work product.  The Court also notes that the amount of transportation reimbursement requested by Plaintiffs, which APS offered to reimburse, is significantly dwarfed by the amount of attorney's fees they request.  See AR 638; compare Plaintiffs' Statement of Costs at 1 (itemizing attorney's fees as $12,650.00) with AR 796 (reflecting transportation costs for 2008-2009 school year as approximately $871.00). [8]

### 2.    APS's Request for Attorney's Fees from Plaintiffs

APS is the prevailing party as to the Does' request for reimbursement for the 2007-2008 transportation costs.  Under 20 U.S.C. § 1415(i)(3)(B)(i)(III), an educational agency that is the prevailing party may request attorney's fees from the parent "if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation."  Courts that have considered this standard have concluded that under the IDEA, "[c]ollecting against parents requires a showing of both frivolousness and an improper purpose." R.P. v. Prescott Unified Sch. Dist., 631 F.3d 1117, 1126 (9th Cir. 2011); see L.P. v. Longmeadow Pub. Sch., No. 10-40190-FDS, 1012 U.S. Dist. LEXIS 115277, at *60 (D. Mass. Feb. 24, 2012)  (ruling that since defendants must show more than prevailing party status and plaintiffs' claims were not frivolous or malicious,

---

[8] To the extent that the Does seek costs relating to the litigation of the 2008-2009 transportation costs upon which they prevailed, D. 30 at 17–18, they still may be entitled to costs even as the Court has denied their claim for attorney's fees.  The IDEA provides that prevailing parties may recover "attorneys' fees as part of the costs," but does not further define the term or give any guidance.  20 U.S.C. § 1415(i)(3)(B).  Courts in this Circuit evaluating claims for costs under the IDEA have applied 28 U.S.C. § 1920, which governs costs in general federal litigation even as other courts in the Circuit have concluded that certain expenses not recoverable under § 1920 may be recovered as part of attorney's fees.  See Mr. and Mrs. S. v. Timberlane Reg'l Sch. Dist., No. 03-260-JD, 2004 U.S. Dist. LEXIS 4032, at *21 (D. N.H. 2004) (collecting cases).  In light of the Court's denial of attorney's fees, but given the fact that Plaintiffs remain the prevailing party as to the litigation of the 2008-2009 transportation costs at the November 2009 Hearing, the Does may submit a verified petition for costs recoverable under 28 U.S.C. § 1920 (exclusive of attorney's fees) only related to the 2008-2009 transportation costs issue.

fees are not warranted); see also Oakstone Cmty. Sch. v. Williams, No. 2:11-cv-1109, 2012 U.S. Dist. LEXIS 130449, at *10 (S.D. Ohio Sept. 13, 2012) (noting that "[f]or a claim to have an 'improper purpose' the claim must be both frivolous (without merit) and result from an improper motive" and "[t]hus, if a claim is not frivolous, it necessarily does not have an improper purpose, even if resulting from an improper motive"); I.S. v. Town of Munster, No. 2:11-cv-160-JD, 2012 U.S. Dist. LEXIS 36766, at *8, 11–12 (N.D. Id. March 19, 2012) (noting that "fee relief against a parent is considerably more limited" because "the School must have plausibly pled both that the Parents' complaint or cause of action was presented for an improper purpose and that it was frivolous" (emphasis in original)). A claim is not frivolous, and therefore not improper if the parent has made plausible arguments and "presented plausible evidence that created a material fact dispute," as long as the evidence is not "completely false or nonsensical." G.M. Saddleback Valley Sch. Dist., No. SACV 11-1449 DOC, 2012 U.S. Dist. LEXIS 169411, at *15 (C.D. Cal. Nov. 26, 2012) (emphasis in original). The fact that the parents were unsuccessful does not make their complaint or subsequent cause of action per se frivolous and the court must be careful not to engage in "post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Sagan v. Sumner Cnty. Bd. of Educ., No. 11-5168/5328, 2012 WL 4773565, at *3 (6th Cir. 2012) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421-22 (1978)).

Although it may have been vexing to the APS that the Does did not accept their settlement offer to reimburse them for the full amount of the 2007-2008 transportation costs or that the Does may have miscalculated the likelihood of their recovery of attorneys' fees regarding the 2008-2009 transportation costs, the Court cannot say that the Does' claims or their pursuit of this litigation were frivolous. Although the Court did not accept all of the arguments

that the Does, proceeding pro se, made when they filed their first action before this Court, the Court remanded the matter back to the BSEA for application of the correct legal standard as to the APS's motion to dismiss.  Attleboro Pub. Sch., 2011 WL 3854649, at \*17.  In remanding the Does' claim to the BSEA, this Court recognized that they had presented plausible evidence that "would, at a minimum, bear on the plausibility of the Does' allegation" as to coercion.  Id. at \*25.  Upon remand, although the Hearing Officer ultimately ruled against the Does, it denied APS's motion to dismiss and, in the course of reaching and resolving the merits of the Does' claims, did find that APS had committed procedural violations even if the effect of these violations on the Does was harmless.  "[S]o long as the plaintiffs present evidence that, if believed by the fact-finder, would entitle them to relief, the case is not per se frivolous and will not support an award of attorney's fees [to the school district]."  Prescott Unified Sch. Dist., 631 F. 3d at 1126.   On this record, although hotly contested by APS, the Court cannot conclude that the Does acted with improper purpose.

The Court has considered APS's further contention that the Does' rejection of APS' settlement offer based on the fact that it did not include attorney's fees was unreasonable and, therefore, all litigation subsequently pursued by them was frivolous and done for an improper purpose.  D. 34 at 14−15.  Certainly, a court may consider an unreasonable rejection of a settlement offer as a factor in its analysis of whether Plaintiffs acted with an improper purpose or if the claimant "unreasonably protracted the final resolution of the controversy" such that his own attorney's fees should be reduced under 20 U.S.C. 1415(i)(3)(F)(i).[9]  See, e.g., S.H. v. Plano Indep. Sch. Dist., 487 F. App'x 850, 862 (5th Cir. 2012); Houston Indep. Sch. Dist., 158 F.3d at

---

[9]The Court did not reach the issue of whether the Does unreasonably protracted the final resolution of the controversy and, therefore, should have their recovery of attorney's fees reduced, since, for the reasons discussed above, it has not awarded any attorney's fees to them.

211; Bell v. Bd. of Educ. of the Albuquerque Pub. Sch., No. CIV 06-1137-JB/ACT, 2009 U.S. Dist. LEXIS 52815, at *32–33 (D.N.M. June 2, 2009); M.L. v. El Paso Indep. Sch. Dist., No. 3:08-cv-76-KC, 2009 U.S. Dist. LEXIS 83299, at *16 (W.D. Tex. August 26, 2009).   But see Ruben A. v. El Paso Indep. Sch. Dist., 657 F. Supp. 2d 778, 792-94 (W.D. Tex. Sept. 25, 2009). However, given the nature of the Does' claims against APS, some of which were well-founded, the Court does not conclude that they have pursued this litigation for a frivolous or improper purpose even if they did not obtain all the relief they were seeking.   Accordingly, the Court declines to award attorney's fees to APS.

## V.    Conclusion

For the reasons discussed above, Plaintiffs' motion for summary judgment and request for attorney's fees are DENIED.  As noted in footnote 8, Plaintiffs may file a verified petition for costs (exclusive of attorney's fees) recoverable under 28 U.S.C. § 1920, not to exceed five (5), double-spaced pages, itemizing and relating only to the litigation of the transportation costs for the 2008-2009 school year and must do so within two weeks of this Order.  APS's cross-motion for summary judgment is GRANTED, and Defendant APS's request for attorney's fees is DENIED.

So ordered.

/s/ Denise J. Casper
United States District Judge